United States Court of Appeals,

Fifth Circuit.

No. 93-3018.

Victor WRIGHT, Petitioner-Appellant,

v.

John P. WHITLEY, Warden, Louisiana State Penitentiary, and Richard P. Ieyoub, Attorney General, State of Louisiana, Respondents-Appellees.

Jan. 13, 1994.

Appeal from the United States District Court for the Middle District of Louisiana.

Before POLITZ, Chief Judge, REAVLEY and EMILIO M. GARZA, Circuit Judges.

POLITZ, Chief Judge:

Complaining that evidence of his possession of a .22 rifle was improperly admitted at his state court trial which resulted in his conviction of three counts of second degree murder, Victor "Joe" Wright appeals the denial of habeas corpus relief. For the reasons assigned we affirm.

*Background*

On October 8, 1986 a Louisiana grand jury handed up nine indictments against Wright, charging him with the first degree murders of Charles London, Sr., Carolyn Willis (London), and Charles London, Jr., and with possession of a firearm by a convicted felon. The murder indictments were amended to charge second degree murder.

Shortly thereafter Wright was tried on a firearm indictment based on an alleged gunfight with Roynell Joshua on March 22, 1986. Joshua testified that he and Wright exchanged pistol fire outside a bar after arguing about a dice game. Wright testified that he was unarmed. A corroborating witness likewise attested. On direct examination Wright testified that "he never did own no gun or no pistol." On cross-examination the government questioned Wright about the weapons possession charges in the other indictments as a predicate for impeaching his disclaimer testimony. Relative to the charge that he was armed while riding a bicycle on the night of May 30 or early morning hours of May 31, 1986, Wright testified he was carrying only an air-powered pellet gun.

In an effort to impeach Wright the state called witnesses who testified that he had kept a rifle

in his bedroom, had shot snakes while fishing at a nearby lake, was seen in a car, neither owned nor driven by Wright, which contained a handgun in the trunk, and, of particular relevance herein, was seen by witness Angela Walker with a rifle strapped to his bicycle which she candidly admitted could have been a pellet gun or a BB gun. The jury returned a verdict of not guilty.

Following the acquittal the prosecutor filed a bill of information charging Wright, as a convicted felon, with possession of a weapon "on or about between" April 30, 1981 and June 30, 1986. In response to a motion for a bill of particulars the state charged more specific dates, including May 30-31, 1986. At trial, as it had at the prior weapons violation trial, the defense conceded the first three elements, to wit, Wright was a convicted felon, less than 10 years had elapsed since completion of his sentence, and he did not have a permit to carry a firearm. The sole factual issue was whether Wright was in possession of a firearm at the charged time.

The evidence presented at the trial of the bill of information, despite its broader time frame, related only to the dates May 30-31, 1986, and the allegation that Wright had a .22 rifle strapped to his bicycle as he cycled around. The only witness called by the state was Detective Robert LeBlanc who testified that Wright had told him that on May 30-31, 1986 he had ridden around with a .22 rifle strapped to his bicycle as he was trying to sell it. The state offered evidence of .22 caliber bullets found at Wright's residence. No weapon was found there.

Wright denied telling LeBlanc the story as related by LeBlanc but said he had told LeBlanc that he was serving as an intermediary between a person who wanted to sell a rifle in order to pay a gambling debt due Wright and a person who wanted to buy it. Wright testified that the owner sold and delivered the weapon personally and that he, Wright, never possessed it. He also offered explanations for the .22 caliber bullets. Called on cross-examination by defense counsel, LeBlanc conceded that he had failed to take a written statement from Wright, the usual procedure followed when investigating a serious offense. The jury promptly returned a verdict of not guilty.

Subsequently Wright was tried on the second degree murder charges. The state offered the testimony of Joyce Sterling that she had lived with Wright for about two years prior to May 1986. She further stated that on the day after the murders Wright told her he had killed the three Londons

and, in the course of his disclosure, described the clothing worn by the young London, a fact only one on the scene would have known. She added that the following Monday she accompanied Wright to see an attorney who advised Wright that his request for assistance was premature. She also testified, as she had as a state impeachment witness in the first weapons violation trial, that Wright kept a .22 rifle in his bedroom and that he had bullets for it.

Peter Chatman testified, as he had as an impeachment witness in the first weapons violation trial, that Wright was shooting snakes with a .22 rifle when they went fishing. After the murders, Chatman guided Detective LeBlanc to the area and, with use of a metal detector, LeBlanc found a .22 caliber cartridge casing which matched the 15 casings found at the London murder scene. This evidence was introduced at the murder trial.

Detective LeBlanc again testified, as he had earlier, that after the murders Wright told him that on May 30, 1986 he had cycled around with a bolt action .22 rifle strapped to his bicycle, trying to sell it.

Finally, Angela Walker testified on direct, much as she had as an impeachment witness in the first weapons violation trial, that around midnight on May 30, 1986 she had seen Wright with a rifle strapped to his bicycle but that she did not know if it was a .22 rifle or a pellet gun.

The jury found Wright guilty and he was sentenced to life imprisonment. Following exhaustion of state remedies Wright seeks federal habeas relief under 28 U.S.C. § 2254, complaining about the evidence of his cycling around on May 30-31, 1986 with a gun strapped to his bicycle, as attested to by Angela Walker and Detective LeBlanc. In a comprehensive, thorough, and scholarly report the magistrate judge recommended denial of habeas relief. The district court adopted her recommendations, denied habeas relief, granted *in forma pauperis* status, and issued a certificate of probable cause for appeal. Wright timely appealed.

*Analysis*

The essential issue presented by this appeal[1] is whether the double jeopardy clause of the fifth

---

[1]Wright raised in the trial court a challenge to the sufficiency of the evidence. That question turns on resolution of the double jeopardy issue as discussed herein. He also complained about a restriction in recross-examination which we find lacks merit.

amendment, which provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," was violated in Wright's trial for the triple murders. More specifically, the issue is whether the collateral estoppel component of the double jeopardy clause proscribed the testimony of Walker and LeBlanc relative to the gun strapped to Wright's bicycle on May 30-31, 1986, and whether that evidence tainted his convictions for murder.

Resolution of this query involves review and consideration of several Supreme Court opinions[2] and their impact on this circuit's precedents, primarily *Wingate v. Wainwright*[3] and its progeny.

Our guidon in resolving the issue presented today is *Ashe v. Swenson* wherein the Supreme Court held that an issue will be precluded by the collateral estoppel doctrine if, in light of the entire record, the previous jury necessarily decided that issue against the prosecution. But if "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration,"[4] the prior acquittal will not be taken as deciding that particular issue. We are enjoined to set the inquiry "in a practical frame and [view it] with an eye to all the circumstances of the proceedings."[5]

It is manifest that the only relevant evidence the second weapons possession jury necessarily rejected was Detective LeBlanc's testimony that Wright admitted to cycling around on May 30-31, 1986 with a .22 rifle strapped to his bicycle. That was the only contested issue in that trial. The acquittal by a rational jury could have been based only on a rejection of LeBlanc's testimony on this element of the offense. The jury necessarily decided in the second weapons possession trial that the prosecutor had not proved beyond a reasonable doubt that Wright was cycling around, at the time

---

[2]*Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Dowling,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *United States v. Felix,* 503 U.S. ----, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *United States v. Dixon,* --- U.S. ----, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

[3]464 F.2d 209 (5th Cir.1972).

[4]*Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194.

[5]*Id.*

and place charged, with a .22 caliber rifle in his possession.

The first weapons possession trial, which likewise ended in an acquittal, involved an alleged gunfight with Raynell Joshua more than two months before the Londons were murdered. The direct testimony was in conflict whether Wright was armed and exchanged shots with Joshua. Impeachment evidence included testimony that Wright kept guns in his house, was seen in an automobile which had a gun in the trunk, shot a .22 rifle at snakes on a nearby lake, and was seen riding on a bicycle with a gun of some kind strapped to it. The factual issue before the first jury, and the only issue which it necessarily decided against the government, was whether Wright had a gun in his possession during his encounter with Joshua.

Thus focused, the issue before us is whether Wright's double jeopardy protections, specifically the collateral estoppel dimension thereof, were breached by the testimony given at his murder trial. Stated more precisely, the inquiry becomes: In order to find Wright guilty of the murders was it necessary for the jury to reject any express or implied material finding by either of the prior weapons possession juries? Controlling precedents require that we answer that question in the negative and deny the habeas relief Wright seeks.

Following *Ashe,* there was some uncertainty about the appropriate treatment to be given to the relitigation of issues involved in a prior criminal trial. In *Wingate v. Wainwright,*[6] we stated the essential holding of *Ashe* and then applied it to bar the relitigation of an evidentiary fact necessarily resolved by the previous jury. This broader reading of *Ashe* has not been accepted by the Supreme Court.

In his brief Wright maintains that in *Grady v. Corbin,*[7] while not going quite as far as we did in *Wingate,*[8] the Supreme Court endorsed the proposition that the collateral estoppel doctrine

---

[6]464 F.2d 209 (5th Cir.1972).

[7]495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

[8]*Grady* rejected the "same evidence" rule implied by *Wingate. See* 495 U.S. at 521 n. 12, 110 S.Ct. at 2093 n. 12 (Brennan, J.) ("A true "same evidence' or "actual evidence' test would prevent the government from introducing in a subsequent prosecution any evidence that was introduced in a preceding prosecution. It is in this sense that we discuss, and do not adopt, a "same evidence' or "actual evidence' test.").

precludes subsequent proof of conduct for which the defendant previously had been tried. We need not now resolve that contention because of the intervening decision in *United States v. Dixon,*[9] which expressly overruled *Grady's* "same conduct" doctrine.

*Dixon* does not purport to address the collateral estoppel conundrum, simply noting "collateral estoppel is not raised in this case,"[10] and referring, for that issue, to *Ashe.* Under *Ashe,* the *Dixon* Court notes, "the collateral estoppel effect attributed to the Double Jeopardy Clause ... may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts."[11]

*Ashe* involved serial prosecutions for a single criminal act. Six men were playing poker early one morning when several masked and armed men burst into the room, robbing the players of their money and personal possessions, and making their escape in an automobile belonging to one of the victims. Four men were later arrested and charged with seven separate offenses, including armed robbery of each of the six players and the theft of the auto. Ashe was first tried for the robbery of one of the players. He was acquitted. He was then tried for the robbery of a second of the players. The government used the same witnesses and evidence as used in the first trial. Ashe was convicted in the second trial. In the first trial the government's evidence foundered on equivocal identification of Ashe as one of the masked robbers. During the second trial the testimony of the witnesses "was substantially stronger on the issue of the petitioner's identity."[12]

Resolving this controversy, the *Ashe* court held that collateral estoppel, albeit an awkward phrase, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[13]

---

[9]--- U.S. ----, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

[10]--- U.S. ----, 113 S.Ct. 2849, 125 L.Ed.2d 556.

[11]*Id.*

[12]*Ashe,* 397 U.S. at 440, 90 S.Ct. at 1192.

[13]*Id.* at 443, 90 S.Ct. at 1194.

In *Dowling v. United States,*[14] the Court gave guidance as to the sweep of *Ashe,* stating:

> Ashe's acquittal in the first trial foreclosed the second trial because, in the circumstances of that case, the acquittal verdict could only have meant that the jury was unable to conclude that the defendant was one of the bandits. A second prosecution was impermissible because, to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion.[15]

*Dowling* teaches that the *Ashe* holding only bars relitigation of a previously rejected factual allegation where that fact is an ultimate issue in the subsequent case.

The first *Ashe* jury necessarily found that Ashe was not one of the men who robbed the poker game. Relitigation of that fact is barred by the collateral estoppel element of the double jeopardy clause of the fifth amendment. But such is not the factual or legal situation presented in the case at bar.

To find Wright guilty of the murder of the three Londons does not turn on whether he possessed a .22 caliber rifle strapped to his bicycle sometime prior to the murders. Neither the acquittal of that charge, nor his acquittal of the charge of possessing a gun two-plus months before in a shootout at a bar, has any relevance to the convictions at bar. These issues were not "ultimate facts" in the murder trial nor did the jury in that trial necessarily reach a result which conflicts with the verdict in either of the earlier trials.

The relevant evidence upon which a rational jury could have convicted Wright of murder included the testimony of his girlfriend that he admitted the murders and, in describing the victims, spoke of clothing that only someone on the scene could have known. She further testified that shortly after the murders they journeyed together to see a lawyer about Wright's legal predicament following the triple homicide. The evidence included a matching of the .22 caliber casings found at the murder scene and a .22 casing found at the lake where Wright had been shooting at snakes. We are not prepared to say that Wright's murder trial jury could not draw the inferences it obviously drew.

The judgment of the district court is AFFIRMED.

---

[14]493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

[15]*Id.* at 347-48, 110 S.Ct. at 672.