### UNITED STATES of America

v.

### Rex SHELBY.

### Criminal No. H–03–93 (7).

United States District Court, S.D. Texas, Houston Division.

Aug. 31, 2006.

Edwin J. Tomko, McManemin & Smith, PC Dallas, TX, for Defendant.

## *AMENDED ORDER* *

GILMORE, District Judge.

Pending before the Court is Defendant Rex Shelby's Motion to Dismiss Counts 2 and 47 Through 50 of the Fifth Superseding Indictment and Counts 2 and 7 Through 10 of the Seventh Superseding Indictment, and to Prohibit the Introduction of Certain Evidence on Grounds of Collateral Estoppel **(Instrument No. 969),** filed on January 24, 2006.

### I.

On March 11, 2003, the United States of America filed a multiple-count Indictment against Defendants Joseph Hirko, Kevin Howard, Scott Yeager, Rex Shelby, Michael Krautz (hereinafter "Defendants") and former Defendants Kenneth Rice and Kevin Hannon, charging them with conspiracy to commit wire fraud and securities fraud, and substantive counts of wire fraud, securities fraud, insider trading, and money laundering. The government filed a Fourth Superseding Indictment on July 22, 2004. (Instrument No. 340). On November 5, 2004, the government filed a Fifth Superseding Indictment. (Instrument No. 468). During the relevant times in the Indictment, Defendants served in various positions as executives to Enron

* This Order was amended to correct minor citation and typographical errors prior to publication.

Communications, Inc., later renamed as Enron Broadband Services ("EBS").

In the Fifth Superseding Indictment, Count One charged Defendant Shelby with conspiracy to commit securities fraud and wire fraud. (Instrument No. 468). Count Two of the Indictment charged Defendant Shelby with the substantive offense of securities fraud in connection with alleged false statements and material omissions made at a January 20, 2000 Analyst Conference. (*Id.*). Counts Three through Six charged Defendant Shelby with the substantive offense of wire fraud in connection with press releases issued by Enron Broadband Services on January 31, 2000 through May 15, 2000. (*Id.*). Counts Forty–Seven through Fifty–Four charged Defendant Shelby with insider trading based on trades of Enron stock made on January 21, 2000 through July 19, 2000. (*Id.*). Counts One Hundred Sixty–Six through One Hundred Seventy–One charged Defendant Shelby with money laundering based on transactions on February 16, 2001 through April 7, 2002. (*Id.*).[1]

On April 18, 2005, through July 13, 2005, this Court conducted a jury trial on all of the charges pending against the Defendants. On July 20, 2005, the jury returned a verdict of not guilty against Defendant Rex Shelby on four counts of insider trading (Counts 51–54). (Instrument No. 869). The jury did not enter a verdict on the conspiracy, wire fraud, and money laundering counts, or the four additional insider trading counts (Counts 47–50). As to these counts, the jury indicated that they were hopelessly deadlocked. (*Id.*).

On August 12, 2005, Defendant Shelby filed a Rule 29 Motion for Judgment of Acquittal. (Instrument No. 880). On December 14, 2005, this Court entered an Order granting Defendant Shelby's Motion for Judgment of Acquittal on Counts 3–6 (Wire Fraud) and Counts 166–171 (Money Laundering). (Instrument No. 939). The Court Denied Defendant Shelby's Motion with respect to Count 1 (Conspiracy to Commit Wire and Securities Fraud); Count 2 (Securities Fraud at the January 2000 Analyst Conference); and Counts 47–50 (Insider Trading). (*Id.*).

On November 9, 2005, the government filed a Seventh Superseding Indictment charging Defendant Shelby with conspiracy, securities fraud, and four counts of insider trading—indicating the government's intention to retry Defendant Shelby on the conspiracy, securities fraud, and insider trading counts for which the jury failed to render a verdict. (Instrument No. 915). The Seventh Superseding Indictment removes the counts on which Defendant Shelby either received a not guilty verdict or that the Court dismissed pursuant to Rule 29. (*Id.*). The Seventh Superseding Indictment was based on factual allegations similar to those asserted in the Fifth Superseding Indictment. (*Id.*). A comparison of the counts alleged in the Fifth Superseding Indictment and the Eighth Superseding Indictment is set forth below.

---

### *United States v. Rex Shelby*
#### (Cr. No. 03–0093–8)
#### Conversion Chart for Counts Relating to Rex Shelby

1. Each of the Counts against Defendant Shelby incorporated the same factual allegations stated in Paragraphs 1 through 33 of the Indictment. Specifically, each Count stated that "[t]he allegations in paragraphs 1 through 33 ... are realleged as if fully set forth here." The Counts then set forth the specific charges against Defendant Shelby. (*See, e.g.*, Count One, below).

United States v. Rex Shelby
(Cr. No. 03–0093–8)
Conversion Chart for Counts Relating to Rex Shelby

| 5th Superseding Indictment<br>*United States v. Hirko, et al.*<br>(Cr. No. 03–0093–5) | 8th Superseding Indictment,<br>*United States v. Rex Shelby*<br>(Cr. No. 03–0093–7) |
| --- | --- |
| 1<br>(Conspiracy to Commit Securities and Wire Fraud) | 1 |
| 2<br>(Securities Fraud: 2000 Analyst Conference) | 2 |
| 3<br>(Wire Fraud—1/31/00 Press Release) | (Jury Acquittal) |
| 4<br>(Wire Fraud—3/30/00 Press Release) | (Jury Acquittal) |
| 5<br>(Wire Fraud—4/11/00 Press Release) | (Jury Acquittal) |
| 6<br>(Wire Fraud—5/15/00 Press Release) | (Jury Acquittal) |
| 47<br>(Insider Trading—Rex Shelby) | 7 |
| 48<br>(Insider Trading—Rex Shelby) | 8 |
| 49<br>(Insider Trading—Rex Shelby) | 9 |
| 50<br>(Insider Trading—Rex Shelby) | 10 |
| 51–54<br>(Insider Trading—Rex Shelby) | (Rule 29 Acquittal) |
| 166–171<br>(Money Laundering—Rex Shelby) | (Rule 29 Acquittal) |

On January 24, 2006, Defendant Rex Shelby filed a Motion to Dismiss Counts 2 and 47 Through 50 of the Fifth Superseding Indictment and Counts 2 and 7 Through 10 of the Seventh Superseding Indictment, and to Prohibit the Introduction of Certain Evidence on Grounds of Collateral Estoppel. (Instrument No. 969). Under the Double Jeopardy Clause of the Fifth Amendment and Doctrine of Collateral Estoppel, Defendant Shelby argues that the crimes charged in Counts 2 (securities fraud) and 47 through 50 (insider trading) of the Fifth Superseding Indictment, and Counts 2 (securities fraud) and 7 through 10 (insider trading) of the Seventh Superseding Indictment, were effectively litigated and decided against the government in the first trial. (Instrument No. 885). Defendant Shelby does not move to Dismiss Count 1 (conspiracy to commit wire and securities fraud) of the Fifth Superseding Indictment or Seventh Superseding Indictment. (*Id.*).

In support of his Motion, Defendant Shelby argues that "[t]he elements of the counts against Mr. Shelby overlap considerably and in some cases are identical, most pointedly, the 'intent to defraud' element. As a consequence, the acquittals of his later-in-time insider trading charges and the dismissals of the wire fraud charges preclude the prosecution of the remaining insider trading charges and securities fraud charge against him." (Instrument N. 970, at 1). In addition, De-

fendant Shelby argues that "should the Government pursue the conspiracy count against Mr. Shelby, it cannot introduce evidence going to his knowledge or intent to commit securities fraud or wire fraud." (*Id.* at 22). Specifically, Defendant Shelby argues that "collateral estoppel bars the introduction of evidence going to (1) whether there was a scheme to make misrepresentations to the investing public, and (2) if so, whether Mr. Shelby participated knowingly and with the intent to defraud." (*Id.* at 23).

On February 13, 2006, the United States filed a Response to Defendant Shelby's Motion to Dismiss on Grounds of Collateral Estoppel. (Instrument No. 980). The government argues that "[Defendant Shelby's] reliance on generalized verdicts of acquittal on a few counts does not give rise to a conclusion that the jury or this court must have reached a decision that he did not commit the essential elements of the offenses now at issue in the Fifth and Seventh." (*Id.* at 3). In addition, the government argues that "the record of the trial ... fatally undermines Shelby's assertion that the jury's partial verdict acquitting him on counts 51–54 and this court's judgment of acquittal on counts 3–6 means that the jury or the court determined the essential elements relating to the counts now at issue." (*Id.*). The government further argues that "[e]ven if the court were to find that the jury or the court made any finding of an essential element related to counts 2 and 47–50 of the Fifth and Counts 2 and 7–10 of the Seventh, such a finding would not bar the introduction of such evidence in the trial on the Conspiracy Count contained in the Fifth and Seventh." (*Id.*). Finally, the government contends that Defendant Shelby's Motion to Dismiss is frivolous and requests that the Court make such a finding in this Order, and proceed with trial as scheduled. (*Id.*).

## II.

The Supreme Court has stated that the principle of collateral estoppel in criminal cases is embodied in the Fifth Amendment's proscription against double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. 1189. According to the Supreme Court:

The rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of the prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

*Id.* at 444, 90 S.Ct. 1189 (internal citations and quotations omitted).

In the Fifth Circuit, collateral estoppel may affect successive criminal prosecutions in one of two ways. First, "it will completely bar a subsequent prosecution if one of the facts necessarily determined in the former trial is an essential element of the subsequent prosecution." *United States v. Brackett,* 113 F.3d 1396, 1398 (5th Cir.1997). Second, "while the subsequent prosecution may proceed, collateral estoppel will bar the introduction or argumenta-

tion of facts necessarily decided in the prior proceeding." *Id.* (citing *United States v. Deerman*, 837 F.2d 684, 690 (5th Cir.1988)). "Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts." *United States v. Mock*, 604 F.2d 341, 343 (5th Cir.1979).

It is axiomatic that "collateral estoppel bars relitigation only of those facts necessarily determined in the first trial." *Brackett*, 113 F.3d at 1398–99 (quoting *Deerman*, 837 F.2d at 690). "When a fact is not necessarily determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue." *Id.* (quoting *United States v. Lee*, 622 F.2d 787, 790 (5th Cir.1980) (emphasis in original)). Thus, "the first step in resolving a claim of collateral estoppel is to determine which facts were 'necessarily decided' in the first trial." *Id.* at 1398 (citing *United States v. Levy*, 803 F.2d 1390, 1398–99 (5th Cir.1986); *Mock*, 604 F.2d at 343). "At this first stage of the inquiry, the defendant bears the burden of demonstrating that the issue he seeks to foreclose was 'necessarily decided' in the first trial." *Id.* (citing *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)).

In a criminal case, the determination of what the jury necessarily decided can be an "awkward" task, because "a general verdict of acquittal does not specify the facts 'necessarily decided' by the jury." *Id.* at 1399. Thus, in making the determination of what the jury necessarily decided the court "must examine allegations of the indictment, testimony, court's instructions to the jury, and jury's verdict to consider what makes the jury's verdict coherent." *Deerman*, 837 F.2d at 690. This inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Ashe*, 397 U.S. at 444, 90 S.Ct. 1189 (quoting

*Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948)). "Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Id.*

With these principles in mind, the Court first turns to the question of whether the government is completely barred from prosecuting Defendant Shelby on the charges contained in Counts 2 and 47 through 50 of the Fifth Superseding Indictment and Counts 2 and 7 through 10 of the Seventh Superseding Indictment. Then, the Court will determine whether the government should be prohibited from offering evidence related to the counts upon which Defendant Shelby was acquitted in the first trial.

### III.

Defendant Shelby contends that the government should be barred from prosecuting him on the securities fraud and remaining insider trading counts because (1) the government argued a unifying theory of wrongdoing that makes no distinction over time or among the counts; (2) the elements of the acquitted insider trading counts are almost identical to the elements of securities fraud, and the elements of the acquitted wire fraud counts greatly overlap those of remaining counts; and (3) because the government offered no evidence that the alleged falsehoods or Defendant Shelby's intent changed over time. To resolve the issues presented by Defendant Shelby, the Court must review, among other things, the indictment, the jury charge and verdict, the theory of prosecution, the theory of defense, and the evidence presented at trial. The complexity of this determination is underscored by

the incestuous nature of the factual allegations contained in the Indictment.

## A.

Paragraphs 1 through 33 of the Fifth Superseding Indictment provide a broad introduction to the Enron Broadband case and alleged schemes to defraud. (Instrument No. 468). Each of the counts on which Defendant Shelby received an acquittal (four counts of insider trading, wire fraud, and money laundering) incorporate Paragraphs 1 through 33 of the Indictment. The remaining insider trading, securities fraud, and conspiracy counts, on which the jury deadlocked, also incorporate Paragraphs 1 through 33. Paragraphs 1 through 10 of the Indictment provide a background description of the parties and Enron Broadband Services. The following Paragraphs 11 through 33, entitled "THE SCHEMES TO DEFRAUD," provide a summary of the alleged schemes to defraud, including the proposal to build the Enron Intelligent Network, a description of alleged false press releases, alleged false statements made at the 2000 Analyst Conference, the Project Braveheart transaction, alleged false statements at the January 2001 Analyst Conference, and "The Defendants' Stock Trading." (Instrument No. 468).[2] Specifically, Paragraph 11 of the Indictment describes the overall summary of the schemes to defraud as follows:

11. From at least April 1999 until May 14, 2001, defendants, JOSEPH HIRKO, KEVIN HOWARD, SCOTT YEAGER, REX SHELBY, and MICHAEL KRAUTZ, together with others, engaged in conduct and made false and misleading statements and omitted material information from statements made,

all of which were designed to and did deceive the investing public and others about the technological capabilities, value, revenue and business performance of EBS. The defendants executed this scheme by, among other means: (i) causing Enron to issue materially false and misleading press releases; (ii) making and causing others to make materially false and misleading statements to equity analysts and others; (iii) using fraudulent means to generate revenue so that EBS and Enron could appear to reach publicly declared financial targets; and (iv) failing to disclose material adverse information about EBS's poor business performance. During this same time period, defendants HIRKO, YEAGER and SHELBY sold large quantities of Enron stock, generating millions of dollars for themselves.

(Instrument No. 468, at 3–4).

The misrepresentations and omissions underlying both the securities fraud and wire fraud charges involve the same general topics, *i.e.*, allegedly overstating the developmental status or capabilities of the EBS network control software or Broadband Operating System ("BOS") and thereby overstating the current success of the business. The securities fraud count specifically relates to allegedly false statements and omissions at the January 20, 2000 Analyst Conference, and the wire fraud counts specifically relate to false statements and omissions contained in press releases issued by EBS. (*See Id.* "Overt Acts" at ¶ 36). In Paragraph 33 of the Indictment, the government provides a

2. None of the allegations pertaining to the Braveheart Transaction, and alleged false statements at the January 2001 Analyst Conference are relevant to the charges and evidence against Defendant Shelby. Thus, the Court need not address these allegations in the context of the current Motion.

temporal link between the wire and securities fraud charges and the insider trading counts, alleging that "[a]t the time when they and others at Enron were making materially false and misleading public statements about EBS, the defendants sold large quantities of Enron stock, generating huge profits. Specifically, between January 20, 2000 and July 2000, SHELBY sold $35,230,923.89." (*Id.* at ¶ 33).

The Indictment does not differentiate what material non-public information Defendant Shelby allegedly possessed and used on each of the dates alleged in the insider trading counts. Rather, the Indictment alleges that "while in possession of material non-public information regarding the technological capabilities, value, revenue and business performance of Enron Communications, Inc. and Enron Broadband Services, SHELBY sold shares of Enron stock ..." (*Id.* at ¶ 50). The Indictment then lists the count number, date, number of shares, sale price, and gross proceeds of the stock sale. (*Id.*). The Seventh Superseding Indictment essentially mirrors the substantive factual allegations and format of the Fifth Superseding Indictment. (Instrument No. 915).

### B.

After a 3–month trial by jury, the jury entered a verdict of "not guilty" on four insider trading counts against Defendant Shelby, including Count 47 charging Defendant Shelby with insider trading on January 21, 2000; Count 48 charging Defendant Shelby with insider trading on January 21, 2000; Count 49 charging Defendant Shelby with insider trading on February 1, 2000; and Count 50 charging Defendant Shelby with insider trading on March 22, 2000. The jury indicated that they were hopelessly deadlocked on the remaining insider trading, conspiracy, securities fraud, wire fraud, and money laundering counts against Defendant Shelby. The Court entered a mistrial on the dead-

locked counts, at the request of defense counsel. Subsequently, the Court granted Defendant Shelby's Motion for Judgment of Acquittal on all of the wire fraud and money laundering counts pending against Defendant Shelby. However, the Court denied Shelby's Motion for Judgment of Acquittal on the conspiracy, securities fraud, and remaining insider trading counts.

Defendant Shelby argues that collateral estoppel should apply in this case because the elements of the acquitted insider trading counts are almost identical to the elements of securities fraud, and the elements of the acquitted wire fraud counts greatly overlap those of remaining counts. Specifically, Defendant Shelby contends that each of the charges required the government to prove beyond a reasonable doubt that Defendant Shelby acted with the intent to defraud, and that his acquittal of four counts of insider trading and wire fraud necessarily decided that Defendant Shelby lacked an intent to defraud. Accordingly, the issue presented by Defendant Shelby ultimately asks the Court to determine whether the jury in the first trial and the Court in its Rule 29 dismissals, rationally could have acquitted him of wire fraud and four counts of insider trading without finding that he lacked an intent to defraud.

■ In order to establish the crime of wire fraud the government must prove beyond a reasonable doubt that the defendant (1) knowingly devised or intentionally devised a scheme to defraud; (2) acted with a specific intent to defraud; (3) used or caused another person to use interstate wire communications facilities for the purpose of carrying out the scheme; and (4) that the scheme to defraud employed false material representations. *United States v. Odiodio,* 244 F.3d 398, 402 (5th Cir.2001); (Instrument No. 854, at 34).

■ In order to establish the crime of securities fraud, the government must prove beyond a reasonable doubt that (1) in connection with the purchase or sale of securities, the defendant either (i) employed a device, scheme, or artifice to defraud, or (ii) made any untrue statement or material omission of fact, or (iii) engaged in an act of fraud and deceit; and (2) acted willfully, knowingly, and with the intent to defraud; and (3) used, or caused to be used, any means or instrumentality of interstate commerce or of the mails. (*Id.* at 26).

■ The crime of insider trading requires proof beyond a reasonable doubt that (1) in connection with the purchase or sale of securities, the defendant employed a device, scheme, or artifice to defraud; (2) acted willfully, knowingly, and with the intent to defraud; (3) used, or caused to be used, any means or instrumentality of interstate commerce; and (4) used material, nonpublic information in his purchase or sale of Enron stock. *United States v. Smith*, 155 F.3d 1051, 1066 (9th Cir.1998); (*Id.* at 41–43).

Each of the crimes of wire fraud, securities fraud, and insider trading requires proof beyond a reasonable doubt that the defendant acted with the intent to defraud. Wire fraud, securities fraud, and insider trading also require a finding that the defendant devised or employed a scheme or artifice to defraud. Conversely, wire fraud and securities fraud do not require proof that the defendant used material, nonpublic information in his purchase or sale of corporate stock, whereas Shelby's acquitted counts of insider trad-

ing do require such proof. Here, the ultimate issue that Defendant Shelby seeks to foreclose from consideration is evidence that he knowingly acted with intent to defraud. *See Wright v. Whitley*, 11 F.3d 542, 546 (5th Cir.1994) (noting that collateral estoppel "only bars relitigation of a previously rejected factual allegation where that fact is an ultimate issue in the subsequent case"). In order to determine what ultimate issues the jury or the Court "necessarily decided," the Court will next examine the evidence presented at trial in conjunction with the essential elements of the charged offenses.

### C.

Over the course of the three-month long trial of the Defendants on the Fifth Superseding Indictment[3], the government presented a theory of prosecution that Defendants all participated in a single conspiracy aimed at falsely portraying the technological capabilities, value, revenue, and business performance of Enron Broadband Services. The government argued that the objective of the conspiracy was to increase the price of Enron stock, so that the Defendants could personally enrich themselves through stock sales, salary and performance bonuses. The government first presented evidence of the problems with EBS products and services leading up to the January 2000 Analysts Conference.

Specifically, the government presented evidence of problems with the Media Cast and Media Transport products. The government also presented testimony that the Interagent software did not function as network control software, and that the En-

---

**3.** The first trial on the Fifth Superseding Indictment, conducted on April 18, 2005 through July 13, 2005, included all five Defendants charged in the Fifth Superseding Indictment—Joseph Hirko, Kevin Howard, Scott Yeager, Rex Shelby, Michael Krautz. After trial, the government later severed the Defen-

dants into three separate indictments, charging Defendants Howard and Krautz in the Sixth Superseding Indictment, charging Defendant Yeager in the Seventh Superseding Indictment, and charging Defendants Shelby and Hirko in the Eighth Superseding Indictment.

ron Intelligent Network did not possess much intelligence. The government further presented evidence that the network had significant problems with security, an inability to control routers on the network, and an inability to perform billing and quality of service operations. In addition, the government presented evidence of internal arguments between EBS employees, including Rex Shelby, David Berberian, John Griebling, John Bloomer, Joe Hirko, and Scott Yeager.

As the first component of the scheme to defraud, the government presented press releases in the latter part of 1999, and testimony that the press releases did not comport with the problems facing EBS. The government further presented evidence of statements made at the January 2000 Analyst Conference. The government argued that Defendants made false and misleading statements about the EBS fiber network, proprietary software, and technological capabilities of EBS. Specifically, the government pointed to statements claiming EBS had an advanced network control software or BOS software, and argued that each statement was false, misleading, or omitted a material fact. The government further argued that Defendants continued to issue false press releases with the purpose of driving up the stock price. Finally, the government argued that Defendants Hirko, Shelby, and Yeager sold large blocks of Enron stock, in order to take advantage of the rising stock price, which resulted from the overall scheme to defraud the investing public at the 2000 Analyst Conference and in press releases.

With respect to Defendant Shelby the government argued that Shelby failed to disclose inside information about the problems with the EIN and within EBS, at the January 2000 Analyst Conference. The government further argued that the object of Defendant Shelby's alleged participation in the scheme to defraud and failure to disclose the "truth" about EBS at the January 2000 Analyst Conference, culminated in his sale of Enron Stock when the public did not know the "truth" about EBS. The same inside information that Shelby allegedly failed to disclose at the January 2000 Analyst Conference is the same alleged inside information that the government claims Shelby possessed when he made trades of Enron stock. After the January 2000 Analyst Conference, the government introduced evidence that Defendant Shelby attended offsite meetings in February and March 2000, in which EBS employees reported on problems with EBS products, the network, and the EIN. However, the government introduced no evidence that Defendant Shelby played any role in the formation of the press releases underlying the wire fraud counts. In addition, other than the fact that Defendant Shelby remained employed at EBS and exercised Enron stock options in June and July 2000, the government introduced no evidence of the particular material non-public information that Defendant Shelby allegedly acquired or possessed during that time period.

Defendant Shelby summarizes his theory of defense and disputed issues on the insider trading counts as follows:

At trial, Mr. Shelby did not dispute the third element of [insider trading]. He admitted attending the 2000 Analyst Conference, exercising options and selling stock shortly thereafter (the 1999 options), and exercising options and selling stocks a few months later (the 2000 Options). Rather, the disputed facts concerned whether any act or statement by Mr. Shelby was in fact untrue or misleading and part of a scheme among the defendants, and if so, whether Mr. Shelby intended to defraud.

(Instrument No. 970, at 10). In addition, Defendant Shelby asserts that one of the disputed issues at trial was whether he actually "used" any inside information in the sale of Enron stock.

Defendant Shelby's summary of disputed issues alone shows that Defendant Shelby's theory of defense could have resulted in an acquittal based on several different elements of an insider trading offense. Although Defendant Shelby asserts that the issue whether he had any "intent to defraud" was "hotly disputed" at trial, the record indicates that Defendant Shelby hotly disputed several issues at trial, including the intent to defraud, scheme to defraud, and use elements of the offense. Thus, the Court cannot, in all practicality, determine what particular issue the jury necessarily decided in acquitting Defendant Shelby of four counts of insider trading. *See Deerman,* 837 F.2d at 690 ("When a fact is not necessarily determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue.").

The Court is cognizant of the fact that the acquitted insider trading counts contain the same exact elements as the remaining insider trading counts. For this reason, Defendant Shelby argues that "[t]he acquittals on the 2000 Options insider trading counts bar re-litigation of the 1999 Options insider trading counts because no matter what element the jury resolved against the Government—scheme/misrepresentations, 'intent to defraud,' or 'use'—that finding is a necessary fact to the remaining 1999 Options insider trading counts." (*Id.* at 12). In support of his argument, Defendant Shelby contends that "[t]he Government made no argument that Mr. Shelby's knowledge or state of mind about any falsities or misrepresenta-

tions changed from January—when the 2000 Analyst Conference and 1999 Options sales took place—to June—when the acquitted 2000 Options sales took place." (Instrument No. 970, at 13).

However, the record contains no clear indication that the jury necessarily decided to acquit Defendant Shelby of four counts of insider trading solely based on a finding that Defendant Shelby lacked knowledge or an intent to defraud when he made trades of the 2000 Options. Rather, the jury could have found that the government failed to prove beyond a reasonable doubt that Defendant Shelby actually used material non-public information that he had in his possession at the time he made those trades, or that the government failed to establish that Defendant Shelby employed or devised a scheme to defraud during that time period.

Furthermore, the government presented significantly differing evidence on the alleged misrepresentations or material non-public information that Defendant Shelby possessed when he exercised the 1999 Options and the 2000 Options. As stated previously, the government presented little to no evidence that Defendant Shelby made any material misrepresentations or acquired material non-public information in June and July 2000, the dates of Shelby's acquitted counts of insider trading.[4] The only evidence that the government presented on these counts is that Defendant Shelby remained employed with EBS until August 2000, and that he exercised his stock options in June and July 2000. Conversely, the government presented substantial evidence that Defendant Shelby either made material misrepresentations or acquired material non-public information during the January 2000 Analyst

---

4. Count 51 (June 26, 2000); Count 52 (June 27, 2000); Count 53 (June 28, 2000); Count 54 (July 19, 2000).

Conference, February and March 2000 off-site meetings, and February 2000 emails concerning problems with BOS, the EIN, and the commercial success of Media Transport. This difference in the evidence presented at trial is sufficient to show that the jury's acquittal of Defendant Shelby for insider trading in June and July 2000, is entirely consistent with the jury's failure to acquit Defendant Shelby of securities fraud related to the January 2000 Analyst Conference and insider trading in January, February, and March of 2000.

With respect to the wire fraud counts, Defendant Shelby argues that he "did not dispute the use of interstate communications, but did dispute whether any scheme employing any false material representations among the defendants existed, and he did maintain that he did not knowingly devise or join any scheme, or act with specific intent to defraud." (*Id.* at 11). Similar to Defendant Shelby's defense of the insider trading counts, Defendant Shelby did not confine his defense of wire fraud to the issue of whether he acted with knowledge or intent to defraud. For example, Shelby's Motion for Judgment of Acquittal, on which the Court based its dismissal of the wire fraud counts pending against Defendant Shelby, argues as follows:

> The trial evidence shows ... that Mr. Shelby had absolutely no involvement with the press releases at issue. The only evidence before the jury showing that Mr. Shelby had any role in the creation, review, drafting, editing, or issuance of *any* press release was from Claudia Johnson, EBS's Director of Public Relations ... The Sun release that Ms. Johnson mentions is a January 20, 2000 press release admitted at trial as Government Exhibit PR 111. That press release was not charged in the indictment. Ms. Johnson's testimony is supported by the testimony of Government witness Kenneth Rice who, despite a week's worth of testimony, was unable to identify *any* role Rex Shelby had in the press release process.

(Instrument No. 880, at 9–10) (emphasis in original).

Accordingly, Defendant Shelby based his argument upon the third element of wire fraud, which requires a finding that "the defendant used or caused another person to use interstate wire communications facilities for the purpose of carrying out the scheme." (Instrument No. 854, at 34). Defendant Shelby's arguments on the third element of wire fraud played a significant role in the Court's decision to grant Shelby's Motion for Judgment of Acquittal. Thus, the Court did not necessarily determine any essential element of securities fraud or insider trading, which do not require a showing that the Defendant used or caused another person to use interstate wire communications facilities for the purpose of disseminating allegedly false statements and material omissions in press releases.

■ A review of the allegations of the indictment, evidence presented at trial, instructions to the jury, the jury verdict, and Rule 29 dismissals, indicates that Defendant Shelby has failed to meet his burden of demonstrating that the issue he seeks to foreclose was "necessarily decided" by the jury or the Court in the first trial. *See Brackett,* 113 F.3d at 1398. Accordingly, the Court finds that the acquittal of Defendant Shelby on the wire fraud, money laundering, and four insider trading counts of the indictment, does not preclude the government from retrying Defendant Shelby for conspiracy to commit wire and securities fraud, securities fraud, and the remaining insider trading counts of the Indictment.

## IV.

In the alternative, Defendant Shelby argues that "should the Government pursue the conspiracy count against Mr. Shelby, it cannot introduce evidence going to his knowledge or intent to commit securities fraud or wire fraud." (*Id.* at 22). Specifically, Defendant Shelby argues that "collateral estoppel bars the introduction of evidence going to (1) whether there was a scheme to make misrepresentations to the investing public, and (2) if so, whether Mr. Shelby participated knowingly and with the intent to defraud." (*Id.* at 23).

The Fifth Circuit has held that "even when a subsequent prosecution is not completely barred ... collateral estoppel may bar the admission or argumentation of *facts* necessarily decided in the first trial." *Brackett,* 113 F.3d at 1400. However, "[a] general verdict of acquittal, exculpating the defendant of liability for a substantive offense, does not estop the government from introducing the same evidence in a subsequent prosecution for conspiracy to commit the same offense." *Id.* (citing *United States v. Garza,* 754 F.2d 1202, 1209 (5th Cir.1985)). "A general verdict of acquittal merely indicates that the government has failed to convince the jury, beyond a reasonable doubt, of at least one essential element of the substantive offense; it does not 'necessarily determine' any facts at issue in the conspiracy trial." *Id.*

When the acquittal of a substantive offense does not completely bar a subsequent prosecution for conspiracy to commit the same offense, the Fifth Circuit in *United States v. Brackett* recognized the following:

> the government may introduce evidence of an alleged criminal act, notwithstanding the fact that the defendant previously has been acquitted of the substantive offense, to prove participation in a conspiracy to commit the substantive of-

fense. Overt acts in furtherance of a conspiracy need not be criminal; therefore, acquittal for the substantive offense does not bar the admission of the same evidence in a subsequent conspiracy trial. Merely because appellants were acquitted of the substantive ... charges does not mean that the facts upon which the charges were based cannot later be used as non-criminal overt acts in furtherance of the conspiracy to commit the substantive offense.

113 F.3d at 1400 (internal quotations and citations omitted).

In *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the Supreme Court held that "an acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling,* 493 U.S. at 349, 110 S.Ct. 668. Thus, the collateral estoppel doctrine "only bars relitigation of a previously rejected factual allegation where that fact is an ultimate issue in the subsequent case." *Wright,* 11 F.3d at 546. "A general verdict of acquittal does not [however] 'necessarily decide' an ultimate issue of fact but merely indicates that the evidence was not sufficient to prove every element of the offense beyond a reasonable doubt." *Brackett,* 113 F.3d at 1401; *see also id.* at 1401 n. 9 (stating that "*Dowling* calls into question the line of cases holding that collateral estoppel may bar the admission or argumentation of facts necessarily decided in the first trial, even if the subsequent prosecution is not completely barred.").

In order to prove the existence of a conspiracy to commit wire and securities fraud, the government must prove beyond a reasonable doubt that the defendant (1) made an agreement to commit the crime of wire or securities fraud; (2) knowingly and willfully joined into the agreement; and (3)

one of the conspirators committed at least one overt act. (Instrument No. 854, at 14). In this case it is unclear what the jury "necessarily determined" when it acquitted Defendant Shelby of four counts of insider trading. As stated previously, Defendant Shelby has failed to meet his burden of establishing that the jury or the Court "necessarily determined" that Defendant Shelby lacked knowledge of a scheme to defraud or that he lacked an intent to defraud.

■■■ Although the jury and the Court may have "necessarily determined" that the government failed to prove, beyond a reasonable doubt, that Shelby used material non-public information in June and July 2000, or that Shelby participated in the actual formation of press releases, the government need not prove these facts beyond a reasonable doubt in a subsequent prosecution for conspiracy, because these facts are not ultimate issues. The ultimate issue in the conspiracy case is whether Defendant Shelby knowingly participated in a conspiracy to commit wire and securities fraud. "The admissibility of evidence relevant to an ultimate issue is governed by Fed.R.Evid. 401, which defines 'relevant evidence' as evidence 'having any tendency to make the existence' of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Brackett*, 113 F.3d at 1401–02. Evidence concerning the material non-public information available to Defendant Shelby and the formation and dissemination of press releases is certainly relevant to the charge of conspiracy to commit wire and securities fraud, but is not required to prove the essential elements of the offense. Accordingly, collateral estoppel does not bar the government from introducing evidence originally offered in the first trial. The admissibility of that evidence is a purely evidentiary matter based on the relevance of that information.

## V.

The government contends that Defendant Shelby's Motion to Dismiss on Collateral Estoppel Grounds is frivolous and requests that the Court make such a finding in this Order, so that the government may proceed with trial as scheduled. In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court recognized a statutory right to pretrial interlocutory appeal of the denial of a motion to dismiss an indictment on the basis of double jeopardy. The Court emphasized that the rights conferred under the Double Jeopardy Clause "would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence" because the Double Jeopardy Clause is not only a protection against twice being convicted, but is also a "guarantee against being twice put to trial for the same offense." *Id.* at 660–61, 97 S.Ct. 2034. *See also United States v. Angleton*, 221 F.Supp.2d 696, 734 (S.D.Tex.2002). The Supreme Court noted, however, that its holding may encourage "dilatory appeals," and that such "problems of delay" may be ameliorated by expedited appeals and procedural rules. *Id.* at 662 n. 8, 97 S.Ct. 2034.

In *United States v. Dunbar*, 611 F.2d 985, 987 (5th Cir.1980), the Fifth Circuit set forth procedural rules for dual jurisdiction of trial and appellate courts during interlocutory appeals from orders denying motions to dismiss based on double jeopardy. The court held that:

Henceforth, the district courts, in any denial of a double jeopardy motion, should make written findings determining whether the motion is frivolous or nonfrivolous. If the claim is frivolous, the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case. If

nonfrivolous, of course, the trial cannot proceed until a determination is made of the merits of an appeal.

*Dunbar,* 611 F.2d at 988. The court further explained that "[i]f an appeal from a motion decided to be frivolous by the district court is found meritorious by the appellate court, [a] conviction in the district court would be reversed. If found not to have merit, jurisdiction for the trial which occurred during the appeal would be affirmed." *Id.* at 989.

In *United States v. Kalish,* 690 F.2d 1144 (5th Cir.1982), the Fifth Circuit explained that "district courts must adhere to the literal meaning of the term 'frivolous,' and that [the] court [would] carefully scrutinize . . . findings of frivolousness." *Kalish,* 690 F.2d at 1154 (stating that "[t]he whole purpose of *Abney* is defeated when district courts proceed to trial because they do not believe the defendant's double jeopardy plea is sufficiently meritorious to warrant a stay"). The court further noted that *Dunbar* was intended to prevent *dilatory* claims, not *colorable* ones. *Id.* (emphasis added). *See also Richardson v. United States,* 468 U.S. 317, 326 n. 6, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) (stating that "[a] colorable claim, of course, presupposes that there is *some possible validity* to a claim") (emphasis added).

In *United States v. Angleton,* 221 F.Supp.2d 696 (S.D.Tex.2002), the Court found that "double jeopardy claims are not frivolous when the claim is complicated or raises legal issues not clearly foreclosed by binding precedent, even if the claim is rejected on the merits." *Id.* at 736. *See e.g., United States v. Kress,* 58 F.3d 370 (8th Cir.1995) (finding double jeopardy claim not frivolous considering the depth of the district court's analysis, notwithstanding that the Eighth Circuit found the claim unsuccessful); *United States v. McHan,* 966 F.2d 134 (4th Cir.1992) (finding double jeopardy claim not frivolous where determination of whether indictments charged same offense required a complex analysis); *c.f. United States v. LaMere,* 951 F.2d 1106 (9th Cir.1991) (finding that purely legal claims are frivolous when the outcome is "clear" upon "long-standing case law" binding in that circuit).

In this case, Defendant Shelby argues that his acquittal of several counts of the indictment precludes the government from re-trying Shelby on the deadlocked counts of the indictment. Specifically, Defendant Shelby argues that the unifying theory of the government's prosecution and the overlapping elements and time-frames of the acquitted and hung counts show that the jury necessarily decided that Defendant Shelby lacked an intent to defraud, as is required in each of the charged offenses. As stated previously, however, the Court finds that Defendant Shelby has failed to meet his burden of demonstrating that the jury or the Court "necessarily decided" any ultimate issue in the first trial. Although the Court finds that Defendant Shelby's collateral estoppel argument lacks merit, the Court finds that Defendant Shelby made a good faith colorable claim of collateral estoppel, rather than a dilatory or frivolous claim with no arguable basis in fact or law.

 Defendant Shelby's collateral estoppel argument required a fact-intensive analysis of the indictment, testimony, court's instructions to the jury, and jury's verdict. This case involved a lengthy multiple-count indictment with charges that alleged similar conduct, similar offenses, similar time frames, and a similar motive and intent to defraud. Thus, the fact-intensive collateral estoppel analysis required in this case, after Defendant received acquittals on several counts, greatly differs from a purely legal analysis involving dissimilar charges or dual sovereignty

issues with clearly defined legal precedent. In addition, Defendant Shelby filed the present motion in a timely manner, several months prior to the scheduled trial date, indicating a good faith argument for dismissal, rather than a dilatory attempt to delay trial. Accordingly, the Court finds that Defendant Shelby's Motion to Dismiss on Collateral Estoppel Grounds is non-frivolous.

## VI.

Defendant Rex Shelby's Motion to Dismiss Counts 2 and 47 Through 50 of the Fifth Superseding Indictment and Counts 2 and 7 Through 10 of the Seventh Superseding Indictment, and to Prohibit the Introduction of Certain Evidence on Grounds of Collateral Estoppel (**Instrument No. 969**) is **DENIED.**

The Clerk shall enter this Order and provide a copy to all parties.