# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-1276

_____

United States of America,      *
     *
        Plaintiff - Appellee,      *
     *
     v.      *
     *
Joseph Abboud,      *
     *
        Defendant - Appellant.      *


_____

No. 01-1277

_____

|  | | Appeals from the United States District Court for the District of Nebraska. |
|---|---|---|

United States of America,      *
     *
        Plaintiff - Appellee,      *
     *
     v.      *
     *
Gene Abboud; G&A Distributing, Inc.,      *
doing business as Broadway      *
Enterprises,      *
     *
        Defendants - Appellants.      *

_____

Submitted: October 17, 2001
Filed: December 7, 2001

_____

Before WOLLMAN, Chief Judge, MURPHY and RILEY, Circuit Judges.
_____

MURPHY, Circuit Judge.

In these interlocutory appeals Joseph and Gene Abboud claim that their prosecution for conspiracy (to commit mail fraud, wire fraud and to assist in the unauthorized reception of cable television services) is barred by double jeopardy because of their sentencing on earlier convictions in Georgia for unauthorized reception of cable television services. The district court[1] denied their motion to dismiss, and they appeal. We dismiss the appeals for lack of jurisdiction.

I.

In February 1996, Joseph Abboud, his father Gene Abboud, United Imports Corp., a.k.a. M.D. Electronics (M.D.) and G&A Distribuiting, Inc. (G&A) were indicted in the Northern District of Georgia on twelve counts of wire fraud (18 U.S.C. § 1343), five counts of unauthorized interception and reception of cable services (47 U.S.C. § 553(a)), four counts of money laundering (18 U.S.C. § 1957), forfeiture (18 U.S.C. § 982), and conspiracy (18 U.S.C. § 371). The indictment alleged that between August 1992 and February 1993, Gene Abboud and G&A had arranged for purchases of cable boxes and descramblers using interstate wire communications with the objective of making retail sales of electronic equipment for the unauthorized interception of electronic communications. Joseph Abboud and M.D. were charged with modifying the cable boxes and descramblers sold to them by Gene Abboud and G&A, so that the equipment could receive unauthorized cable signals. Joseph Abboud and M.D. then sold the illegally modified boxes and descramblers to retail customers through a toll free telephone number.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

On September 30, 1996, the Abbouds each pled guilty to five counts of assisting in the unauthorized reception of cable television services, all in violation of 47 U.S.C. § 553(a). The conspiracy alleged in Count 13 was to be dismissed as part of their plea agreement. At the plea hearing, the district court[2] asked the Abbouds whether they understood that they were obligated to reveal any side agreements not included in the written plea agreement. They said they understood that obligation, and they did not indicate that there were any other agreements with the government.

In April, 1997, the Abbouds were both sentenced to six months of home confinement and five years of probation. Fines were also imposed ($950,000 on Joseph and $50,000 on Gene), and the defendants agreed to forfeit substantial amounts of property. A prosecutor stated at the sentencing hearing that the Abbouds might face future charges growing out of ongoing criminal investigations in New Jersey.

In November 1999, the Abbouds and others were charged in a superseding indictment in the District of Nebraska with multiple criminal violations relating to cable television piracy operations conducted from 1989 through 1998. Count 1 charged the Abbouds with conspiracy under 18 U.S.C. § 371, to commit mail fraud and wire fraud and to assist in the unauthorized reception of cable television services (in violation of 18 U.S.C. §§ 1341, 1343 and 47 U.S.C. § 553(a), respectively).

The Abbouds moved to dismiss the conspiracy charges on the basis of double jeopardy. Joseph Abboud also claimed that the money laundering counts violated terms of the Georgia plea agreement. The district court denied the motions, and the Abbouds filed these interlocutory appeals arguing that the conspiracy charges are barred by double jeopardy. The Abbouds also moved for a special finding and stay

---

[2]The Honorable Julie E. Carnes, United States District Judge for the Northern District of Georgia.

pending appeal. The district court granted the motions and determined that the double jeopardy grounds for their appeals were nonfrivolous.

## II.

The government contends that this court lacks jurisdiction to reach the Abbouds' double jeopardy claim, citing United States v. Grabinski, 674 F.2d 677, 678-80 (8th Cir.) (en banc) (per curiam), cert. denied, 459 U.S. 829 (1982). Under Grabinski an order denying a motion to dismiss for double jeopardy is appealable "only if a colorable claim is made." Id. at 678. In the absence of a colorable claim of double jeopardy, the appeal must be dismissed for lack of jurisdiction. Id. at 679-80. A colorable claim requires a showing of previous jeopardy and the threat of repeated jeopardy. Id. at 679.

The Fifth Amendment assures that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause provides three separate protections for criminal defendants: protection against a second prosecution for the same offense after acquittal, protection against prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. Ohio v. Johnson, 467 U.S. 493, 498-99 (1984) (citations omitted). The clause also prohibits government from dividing a single criminal conspiracy into multiple conspiracy convictions. See Braverman v. United States, 317 U.S. 49, 52-53 (1942); United States v. Bennett, 44 F.3d 1364, 1369 (8th Cir. 1995). The alleged agreement itself is the prohibited conduct targeted by the conspiracy statute, and there is only one offense where there is only one agreement. See 317 U.S. at 54; 44 F.3d at 1369.

In this case the Abbouds base their double jeopardy claim on the protection against multiple punishments for the same offense. The Abbouds claim that the conspiracy count in the Nebraska indictment is a second prosecution for the same

offense for which they were punished in Georgia. The Abbouds were never convicted of the conspiracy charges in the Georgia case because those charges were dismissed as part of the plea agreement. They contend, however, that the punishment for their convictions of assisting the unauthorized reception of cable services incorporated the dismissed conspiracy offenses as relevant conduct, leading to $1,000,000 in fines and substantial property forfeitures.

Relevant conduct which has been considered in a prior sentencing can be a basis for subsequent prosecution without violating the double jeopardy clause so long as the earlier sentence was within the statutory or legislatively authorized punishment range. Witte v. United States, 515 U.S. 389, 397, 406 (1995) ("[C]onsideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct..."). The sentences imposed on the Abbouds were within the statutorily authorized sentences ranges.

At the sentencing hearing the government stipulated that the amount of fraud was $39,569.77, an amount corresponding to the estimated sale of converted cable boxes in Georgia. The district court adopted the stipulated amount of fraud in calculating the Abbouds' guidelines.[3] That amount of fraud made their offense level ten which, combined with their criminal history, resulted in a 6-12 month guidelines

---

[3]The presentence report had valued the amount of fraud at $3,847,307.43, an amount it said reflected sales of illegal converter boxes throughout the United States and elsewhere during the time frame covered by the Georgia conspiracy charge. Although the district court stated at the sentencing hearing that it could have found the fraud to be "over the million dollar mark," its actual finding was that the fraud amount was $39,569.77. If the district court had adopted a $1 million amount, the Abbouds' offense level would have been seventeen, which would have resulted in a 24-30 month guidelines range. See USSG §§2B5.3(b)(1), 2F1.1(b)(1)(L). Imprisonment would have been mandatory as a Zone D offense. See USSG §5C1.1(f).

range.  See United States Sentencing Commission, Guidelines Manual, §2B5.3(b)(1) (Nov. 1995) and the table at §2F1.1(b)(1)(E).  This sentence placed them within Zone B of the guidelines where imprisonment is not mandatory, see USSG §§5B1.1, 5C1.1, and enabled the court to impose sentences of six months home confinement and five years probation.  This was a favorable result for the Abbouds,[4] and it was not one which might be expected for a wide ranging conspiracy such as that charged in the current case.  Their fines ($950,000 for Joseph and $50,000 for Gene) were also within the statutory ranges for convictions involving two Class A misdemeanors and three Class E felonies.  See 18 U.S.C. § § 3571(b)(3), (5) (2000); USSG §5E1.2, comment. (n.2) (Nov. 1995).

Since the Abbouds were sentenced in Georgia within the legislatively authorized punishment range for their convictions for assisting unauthorized reception of cable television services, their contention that they were punished for the dismissed conspiracy charges collapses.  As the Supreme Court held in Witte, "[W]here the legislature has authorized such a particular punishment range for a given crime, the resulting *sentence within that range constitutes punishment only for the offense of conviction* for purposes of the double jeopardy inquiry."  515 U.S. at 403-04 (emphasis added).  Under Witte, the Abbouds were sentenced in Georgia only for assisting in the unauthorized reception of cable services, in violation of 47 U.S.C. § 553(a), and their multiple punishment theory does not raise a colorable claim of double jeopardy.

---

[4]Even under the amount of fraud found by the district court, the Abbouds could have been exposed from 30 months to as much as 192 months imprisonment on their five convictions for assisting unauthorized reception of cable services.  See 47 U.S.C. § 553(b) (2000).

III.

A focus on whether more than one conspiracy was charged in the two indictments also shows that the Abbouds have no colorable claim of double jeopardy. A "totality of the circumstances" test is used to determine whether there is more than one conspiracy and it involves consideration of such factors as (1) the time period involved; (2) the individuals charged as coconspirators; (3) the offenses charged; (4) the overt acts charged or any other description of the offenses charged which indicate the nature and scope of the activity sought to be punished; and (5) the places where the alleged conspiratorial acts took place. United States v. Thomas, 759 F.2d 659, 662 (8th Cir. 1985).

The conduct charged as conspiracies in the two indictments under review here had some overlap in time. The Georgia conspiracy was alleged to have taken place between August 1992 and February 1993. The conspiracy in this Nebraska case is alleged to have begun in 1989 and to have continued through December 1998. Even though a subsequent conspiracy is alleged to have occurred during some of the same time as a prior conspiracy, it is not necessarily the same conspiracy. See United States v. Kienzle, 896 F.2d 326, 329 (8th Cir. 1990) (no bar for five month overlap over a three year period); Thomas, 759 F.2d at 666 (no bar for four year overlap over a nine year period). The fact that the narrower conspiracy charge preceded the current broader Nebraska charge reduces the concern that the government is using multiple conspiracy charges to retry the Abbouds on smaller and smaller conspiracies. See United States v. Macchia, 35 F.3d 662, 669 (2d Cir. 1994) ("[W]here the smaller conspiracy is charged first, there is not the same opportunity for prosecutorial abuse, and the overlap of time is therefore a less important consideration.").

The Abbouds are alleged to be at the center of both conspiracies, but in this case they are charged with involvement in a more extensive web of criminal conduct. The Georgia indictment was limited to the Abbouds and their businesses, but the

Nebraska indictment includes four additional coconspirators[5] and seven unindicted coconspirators.[6] The substantial increase in the number of coconspirators in the Nebraska indictment and the expanded scope of criminal activity are factors which suggest that there were separate conspiracies and that the Abbouds assumed different roles, duties, and responsibilities in the second conspiracy.

Similar offenses were charged in both cases. In both indictments the Abbouds were charged with conspiracy, in violation of 18 U.S.C. § 371, to commit wire fraud (18 U.S.C. § 1343) and to assist in the unauthorized reception of cable services (47 U.S.C. § 553(a)). In this case the Abbouds were also alleged to have conspired to commit mail fraud in violation of 18 U.S.C. § 1341. Similarities between charges in two indictments does not necessarily mean that there was a single conspiracy. As this court has pointed out, "[t]he fact that both indictments charge some of the same statutory violations is not particularly important. It is possible to have two different conspiracies to commit exactly the same type of crime." Thomas, 759 F.2d at 666.

The fourth factor requires consideration of the overt acts charged and the nature and scope of the activity sought to be punished in each case. Acts alleged as part of the conspiracy in this case include manufacture of cable descramblers in Asia, additional purchases of "turned on"[7] devices from various wholesalers throughout the United States, and the subsequent sale of Abboud products to purchasers in North Carolina, Colorado, Florida, New Jersey, and California. The Nebraska indictment also includes acts by the Abbouds and their coconspirators to launder their profits through an overbilling scheme involving Cayman Island shelf corporations. The facts

---

[5]David Abboud, Baron Abboud, Susan Germer, and Infinite Electronics.

[6]Frank Russo, Edward "Trey" Prevost, William Yea, Todd Littlejohn, Frank Redessy, Glenn Montelbono, and Sharon Snider.

[7]A "turned on" cable box is one that has been modified or enhanced to allow full reception of all premium and pay per view programming.

alleged in the Georgia conspiracy were only a small part of the Abboud's extensive network of illegal activities, which are alleged to have occurred over a large period of time. In other cases we have recognized separate conspiracies where the scope of the second conspiracy was broader or qualitatively different from the first charged. See United States v. Aguilera, 179 F.3d 604, 608-09 (8th Cir. 1999); United States v. Tanner, 860 F.2d 864, 867 (8th Cir. 1988); United States v. Robinson, 774 F.2d 261, 274 (8th Cir. 1985).

Finally, we consider the places in which the conspiratorial acts occurred. The government concedes that both conspiracies were headquartered in Omaha, Nebraska, but notes that the conduct outlined in the earlier conspiracy charge was initiated and took place in Georgia. A substantial portion of the criminal conduct alleged in this case involves activities in the British West Indies, Asia, Florida, Pennsylvania, North Carolina, Texas, Colorado, New Jersey, and California. Even if two conspiracies contain some geographical overlap, there may be separate conspiracies if each also involves distinct places. See Aguilera, 179 F.3d at 609; Kienzle, 896 F.2d at 329. The same is true in this case.

IV.

The Abbouds have not raised colorable claims of double jeopardy because they were sentenced within the statutorily authorized range for their previous convictions and the totality of the circumstances do not suggest that there has been only a single conspiracy or that jeopardy previously attached. For these reasons we lack jurisdiction over these interlocutory appeals, and they are dismissed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.