# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2010

Lyle W. Cayce
Clerk

No. 10-20148

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

REX SHELBY

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:

The defendant, Rex T. Shelby, filed a pretrial appeal from an order by the district court that denied his motion to dismiss, on double jeopardy grounds, a Seventh Superseding Indictment filed against him on November 9, 2005. Presently before this court is the Government's motion to dismiss Shelby's appeal. The Government contends that we lack subject-matter jurisdiction over the appeal because Shelby's double jeopardy claims are "not colorable" and "frivolous." For the reasons discussed below, we agree and dismiss the appeal.

No. 10-20148

## I.  Background

### A.   Shelby's Trial, Reindictment, and First Motion to Dismiss on Jeopardy Grounds

Shelby's case relates to the collapse of the Enron Corporation and its subsidiaries.  Shelby was a senior executive at Enron Broadband Services ("EBS"), Enron's broadband and telecommunications unit.  Shelby, along with co-defendants F. Scott Yeager and Joseph Hirko, were indicted in November 2004 on various counts of conspiracy to commit wire and securities fraud; securities fraud; wire fraud; insider trading; and money laundering.  In July 2005, a jury acquitted Shelby on four of his insider trading counts—those involving trades made in the summer of 2000 (the "Summer 2000" counts)—but hung on the remaining counts against him.  The jury also acquitted or hung as to some counts against Yeager and Hirko.  The district court declared a mistrial on the hung counts.  The Government subsequently obtained new indictments against all of the defendants, including the Seventh Superseding Indictment against Shelby.

The Seventh Superseding Indictment recharged Shelby with four insider trading counts relating to trades made in early 2000 (the "Early 2000" counts) on which the jury had hung.  The indictment also charged one count of conspiracy and one of securities fraud.  Shelby moved to dismiss the indictment on double jeopardy grounds.  The district court denied the motion, *United States v. Shelby*, 447 F. Supp. 2d 750 (S.D. Tex. 2006), and we affirmed, *United States v. Yeager*, 521 F.3d 367 (5th Cir. 2008) (*Yeager I*), *rev'd on other grounds*, 129 S. Ct. 593 (2008).

In support of dismissal, Shelby's chief argument was that in acquitting as to the Summer 2000 counts, the jury necessarily decided issues of fact that had preclusive effect as to the counts in the new indictment.  Specifically, Shelby

asserted that, by acquitting, the jury must necessarily have determined that he lacked the intent to defraud. The parties do not dispute that a finding that Shelby lacked the intent to defraud would defeat a necessary element of the insider trading and securities fraud counts in the new indictment, therefore precluding prosecution as to these counts. *See United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997) ("[C]ollateral estoppel . . . will completely bar a subsequent prosecution if one of the facts necessarily determined in the former trial is an essential element of the subsequent prosecution.").

The district court determined and we agreed, however, that in acquitting as to the Summer 2000 counts, the jury did not necessarily decide that Shelby lacked intent. Rather, "[a]fter an extensive examination of the record," we affirmed the district court's conclusion that the jury's acquittal could have hinged on the fact that the government had failed to prove beyond a reasonable doubt that Shelby actually *used* or relied upon material nonpublic information in his possession at the time he made the trades—another element of insider trading. *See Yeager I*, 521 F.3d at 372–73. The district court observed that "the government presented little to no evidence that Defendant Shelby made any material misrepresentations or acquired material non-public information in June and July 2000, the dates of Shelby's acquitted counts of insider trading." *Shelby*, 447 F. Supp. 2d at 761. The district court also noted that, by contrast, "the government presented substantial evidence that Defendant Shelby either made material misrepresentations or acquired material non-public information" before the trades that were the subject of the Early 2000 counts. *Id.* at 761–62.

We agreed with the district court's reasoning, noting also that Shelby had specifically testified that he made the Summer 2000 trades "because he was uncomfortable with being in the stock market" and in reliance on a friend's advice on when to sell. *Yeager I*, 521 F.3d at 372. We held that the jury was properly instructed that a trade that "used" or was "motivated by" inside

information was an element of insider trading. *Id.* at 372–73. We concluded that the jury did not necessarily find that Shelby used insider information in making the Early 2000 trades:

> In acquitting Shelby of the later [Summer 2000] counts, the jury could have differentiated between the two different sets of trades. The jury could have found that Shelby did not use insider information when he conducted the trades that underlie the Summer 2000 Insider Trading Counts but did use insider information when he conducted the trades that underlie the Early 2000 Insider Trading Counts. The evidence at trial supports this distinction.

*Id.* at 373. We noted specifically that Shelby's trading patterns were markedly different between the Early 2000 and Summer 2000 trades. In the Early 2000 trades, Shelby exercised options that had vested in June 1999. We speculated that "[f]rom this delay, the jury could have rationally concluded that Shelby purposely waited for the stock price to go up before exercising his 1999 options and that Shelby knew the price would go up because of his knowledge of insider information." We noted that by contrast, with the Summer 2000 trades, Shelby exercised his options as soon as they vested. *Id.*

Three days after granting certiorari as to his co-defendant Yeager, *Yeager v. United States*, --- U.S. ---, 129 S. Ct. 593 (2008), the Supreme Court denied Shelby's petition for certiorari, *Shelby v. United States*, --- U.S. ---, 129 S. Ct. 595 (2008); *reh'g denied*, --- U.S. ---, 129 S. Ct. 977 (2009).

**B.    Yeager's Trial, Reindictment, and Motion to Dismiss on Jeopardy Grounds**

In *Yeager I*, 521 F.3d at 367, we also rejected the double jeopardy claims of Shelby's co-defendants, Hirko and Yeager. At the 2005 trial, the jury acquitted Yeager of securities fraud, wire fraud, and conspiracy but hung on 20 counts of insider trading and 99 counts of money laundering. The government reindicted Yeager on the hung charges.

No. 10-20148

Yeager moved to dismiss the new indictment, urging that double jeopardy barred the insider trading counts. Yeager argued that in acquitting on the fraud and conspiracy counts, the jury necessarily decided that he did not possess insider information, an element of insider trading. We agreed that "the jury, acting rationally, could have acquitted Yeager on securities fraud only by concluding that he did not have insider information." *Id.* at 376–77. We nevertheless concluded that collateral estoppel did not bar the insider trading counts. Applying our precedent in *United States v. Larkin*, 605 F.2d 1360, 1370 (5th Cir. 1979), we considered the hung counts and observed that if "the jury found that [Yeager] did not have insider information, then the jury, acting rationally, would have acquitted him of insider trading and money laundering. Instead, the jury hung." *Yeager I*, 521 F.3d at 379. We reasoned that the hung counts therefore created uncertainty about what the jury necessarily decided. *Id.* In light of this uncertainty, we concluded that collateral estoppel did not apply. *Id.* at 379–80.

The Supreme Court granted certiorari on Yeager's appeal. The Court then abrogated our precedent in *Larkin* and reversed, concluding that we erred in weighing the effect of the hung counts in determining the preclusive effect of the acquittals. *Yeager v. United States*, --- U.S. ---, 129 S. Ct. 2360, 2368 (2009) (*Yeager II*). The Court held:

> [T]he consideration of hung counts has no place in the issue-preclusion analysis. . . . To identify what a jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide. A jury's verdict of acquittal represents the community's collective judgment regarding all the evidence and arguments presented to it. Even if the verdict is based upon an egregiously erroneous foundation, its finality is unassailable. Thus, if the possession of insider information was a critical issue of ultimate fact in all of the charges against the petitioner, a jury verdict that necessarily decided that issue in his favor protects him

5

No. 10-20148

from prosecution for any charge for which that is an essential element.

*Id.* at 2368–69 (internal quotation marks omitted). The Court reasoned that a "contrary conclusion would require speculation into what transpired in the jury room," and noted that "[i]f there is to be an inquiry into what the jury decided, the evidence should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration." *Id.* at 2368 (internal quotation marks omitted; quoting *Packet Co. v. Sickles*, 72 U.S. (5 Wall.) 580, 593 (1866)). On remand, we dismissed the indictment against Yeager. *United States v. Yeager*, 334 F. App'x 707 (5th Cir. 2009) (*Yeager III*).

After *Yeager II*, the Court granted certiorari as to Hirko and remanded for further consideration in light of *Yeager II*. *Hirko v. United States*, 129 S. Ct. 2858 (2009).

## C.    Shelby's Second Motion to Dismiss on Jeopardy Grounds

After the Court issued *Yeager II*, Shelby renewed his motion in the district court to dismiss the indictment, contending that *Yeager II* was an intervening change in the law that provided a new basis to evaluate his jeopardy claims. On January 29, 2010, the district court denied Shelby's motion to dismiss, but declined to find his claims frivolous. On January 29, 2010, Shelby filed an interlocutory appeal from that order, premised on raising a colorable issue of double jeopardy. *See Abney v. United States*, 431 U.S. 651 (1977); *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980) (en banc).[1]

---

[1] In this circuit, district courts follow a "summary procedure" under which the district court is required to assess, after considering the merits of the motion to dismiss on the basis of double jeopardy, whether the motion is frivolous. If the district court makes such a finding, then an interlocutory appeal from the denial of that motion does not deprive the district court of jurisdiction to proceed with trial. *Dunbar*, 611 F.2d at 988.

6

The Government then brought the present motion to dismiss the appeal, arguing that we lack jurisdiction over the appeal because Shelby's double jeopardy claim is "not colorable" and "frivolous."

## II. The Legal Standards

Under the collateral order doctrine, we have jurisdiction under 28 U.S.C. § 1291 to review a pretrial order rejecting a claim of double jeopardy, provided the jeopardy claim is "colorable." *Richardson v. United States*, 468 U.S. 317, 322 (1984) ("The appealability of a double jeopardy claim depends upon its being at least colorable."). A colorable claim "presupposes that there is some possible validity to a claim." *Id.* at 326 n.6. A claim is not colorable if "no set of facts will support the assertion of [the petitioner's] claim of double jeopardy." *Id.* "It is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims of former jeopardy." *Abney*, 431 U.S. at 662 n.8; *see also United States v. Bobo*, 419 F.3d 1264, 1267 (11th Cir. 2005) ("[F]rivolous claims and arguments that have already been squarely decided by precedent do not afford appellate courts jurisdiction to review interlocutory orders.").

Shelby disputes that the colorability requirement is in fact jurisdictional, pointing to the Tenth Circuit's conclusion in *United States v. Wood*, 950 F.2d 638, 642 (10th Cir. 1991), that "[t]he summary determination of whether a defendant has raised a colorable claim is not necessary to our jurisdiction. Rather, it is a discretionary action within our 'supervisory powers' to ensure that defendants do not engage in 'dilatory appeals.'" *Richardson*, however, states that a "colorable double jeopardy claim [is] appealable under 28 U.S.C. § 1291," and that "the appealability of a double jeopardy claim depends upon its being at least colorable." 468 U.S. at 322. Read together, these statements strongly suggest that a colorable claim is a prerequisite for jurisdiction. The majority of the circuits to have considered the issue treat colorability as jurisdictional. *See*

*United States v. Bhatia*, 545 F.3d 757, 760–61 (9th Cir. 2008) ("Because [the defendant's] claims of res judicata and collateral estoppel are not colorable, we dismiss this interlocutory appeal for lack of jurisdiction."); *Bobo*, 419 F.3d at 1267; *United States v. Hickey*, 367 F.3d 888, 891 (9th Cir. 2004) ("Both the Supreme Court and this court . . . have held that we have interlocutory appellate jurisdiction to reach the merits only of 'colorable' double jeopardy claims."); *United States v. Abboud*, 273 F.3d 763, 769 (8th Cir. 2001) ("The Abbouds have not raised colorable claims of double jeopardy . . . . For th[is] reason[ ] we lack jurisdiction over these interlocutory appeals, and they are dismissed."); *United States v. Andrews*, 146 F.3d 933, 942 (D.C. Cir. 1998) ("[T]he Supreme Court held in *Richardson v. United States* that a claim of double jeopardy must be at least 'colorable' to confer interlocutory jurisdiction on an appellate court."). We join these circuits in concluding that a colorable, non-frivolous claim is a prerequisite to our jurisdiction under 28 U.S.C. § 1291 to hear a pretrial double jeopardy appeal.

We have already ruled upon and rejected Shelby's motion to dismiss the present indictment, and "[a]bsent an en banc or intervening Supreme Court decision," we may not overrule any part of that prior panel's decision. *United States v. Martinez–Rios*, 595 F.3d 581, 586 n.5 (5th Cir. 2010). Therefore, jurisdiction, and ultimately relief, are available now only if the Court's intervening decision in *Yeager II* raises a colorable issue as to the correctness of *Yeager I*. We conclude that it does not.

### III.  Analysis

Shelby asserts two reasons why *Yeager II* casts the correctness of *Yeager I* into doubt, both of which we conclude, after careful consideration, are frivolous.

### 1.    The "Points in Controversy" Claim

Shelby first contends that *Yeager II* set out a requirement that a court attempting to determine what a jury necessarily decided must restrict its inquiry

to the "points in controversy" at the trial. According to Shelby, this requirement represents a "correction" in the law that affects the result in this case. Shelby draws his argument from the Court's statement in *Yeager II* that "[i]f there is to be an inquiry into what the jury decided, the evidence should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration." *Id.* at 2368 (internal quotation marks omitted; quoting *Packet*, 72 U.S. (5 Wall.) at 593).

Shelby argues that whether he "used" insider information for the Early 2000 but not for the Summer 2000 trades was never a "point in controversy" in his case. Shelby contends that the Government never argued that Shelby relied on different information in completing the Early 2000 and Summer 2000 trades—to the contrary, the Government argued that Shelby made these trades based on a cumulation of inside information and did not differentiate between the types of information that may have motivated each trade. Shelby further urges that he, too, in defending his case, did not differentiate between trades but instead argued as to all of the trades that he had other reasons, unrelated to insider information, for selling his stock. Shelby argues that because the issue of whether or not he "used" insider information in the Summer 2000 trades as opposed to the Early 2000 trades was never a "point in controversy" at trial, we must necessarily conclude that the jury's basis for acquittal was lack of intent.[2]

This argument has no merit. The test, as described by the *Yeager II* Court, is that in attempting to determine what the jury necessarily decided, the evaluating court should look not only to the "points in controversy on the former trial," *but also* to the parties' testimony and the questions submitted to the jury. The parties disputed as to all of the trades whether insider information was used. The testimony and evidence showed that different amounts of available

---

[2] Shelby also argues that because the Summer 2000 acquittals were premised on lack of intent, the conspiracy counts against him in the new indictment should also be dismissed.

No. 10-20148

information and different trading patterns were associated with the Early 2000 versus the Summer 2000 trades. And the jury was instructed that "use" was an element of insider trading. The district court and this court looked to precisely these things in concluding that the Summer 2000 acquittals had no preclusive effect as to intent.

Even if the test described by the *Yeager II* Court were not followed, however, there is no basis to conclude that *Yeager II*'s reference to "points in controversy" represents a "correction" in the law. *Yeager II* reached only the "narrow legal question" of whether a court may consider the effect of hung counts in evaluating what the jury necessarily determined. 129 S. Ct. at 1270. The *Yeager II* Court clearly found the consideration of hung counts to be a speculative undertaking out of keeping with the rule—which the Court *did not* otherwise accuse this court of violating—that a court must cabin its inquiry into what the jury necessarily determined to the points of controversy in the case, the arguments and evidence in the record, and the questions presented to the jury. And indeed, except for permitting the consideration of hung counts in determining what the jury "necessarily decided," our court has consistently followed this rule. *See, e.g.*, *Garcia v. Dretke*, 388 F.3d 496, 503–04 (5th Cir. 2004) (in evaluating a jeopardy claim, a court is required "to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter" (quoting *Ashe v. Swenson*, 397 U.S. 436, 444 (1970)); *United States v. Brackett*, 113 F.3d 1396 (5th Cir. 1997).

In short, even if the district court and this court did not adhere to the "points in controversy" test that Shelby urges—and the record does not support this contention—there is no basis to conclude that *Yeager II* created an intervening change or "correction" in the applicable law. Therefore, we have no basis to consider this issue as a basis for finding jeopardy in Shelby's renewed motion.

10

## 2.    The "Consideration of Hung Counts" Claim

Shelby's second argument, on which he places considerably less emphasis, is that the district court and this court in fact considered the hung counts in determining that the Summer 2000 acquittals had no preclusive effect. Shelby contends that this conclusion (reached by both this court and the district court) necessarily resulted from "the need, since absolved, to reconcile the acquittals with the hung counts."

This argument has no merit. The district court's and this court's conclusions as to the Summer 2000 acquitted counts do not depend on any reference to the Early 2000 hung counts. We concluded that the Government presented very little evidence that Shelby had access to insider information when the Summer 2000 trades were made; we credited Shelby's testimony that he did not rely on such evidence; and we noted that the jury had properly been instructed that the "use" of or reliance on insider information was an element of insider trading. These findings, by themselves, sufficiently support the conclusion that the jury's acquittal as to the Summer 2000 counts could have been premised on insufficient evidence of "use" of inside information.

It is true that both the district court and this court compared the substantial evidence of "use" of insider information that accompanied the Early 2000 hung counts to the relative absence of such information accompanying the Summer 2000 acquitted counts, and cited this distinction as one reason to conclude that lack of insider information, rather than lack of proof of intent, could have led the jury to acquit as to the Summer 2000 counts. But this type of comparison does not run afoul of *Yeager II*. *Yeager II* stands for the proposition that if an acquittal establishes that the jury necessarily determined a certain element of an offense, the court may not examine the effect of hung counts to undermine that determination by showing that the jury was necessarily inconsistent or confused in its conclusions. Nothing in *Yeager II*

prohibits the type of comparison drawn in this case, in which the distinction was cited simply to demonstrate one possible rational basis for the jury's acquittal.

### 3.    Shelby's Claims are Not Colorable

Shelby has failed to cite any intervening change or correction in the law effected by *Yeager II* that has relevance to his double jeopardy claim, which a panel of this court has already considered and squarely rejected.  The issues, as alleged in his motion to dismiss the indictment and in his response to the Government's motion to dismiss his appeal, are not close and are without arguable validity.  Accordingly, Shelby has not raised a colorable claim and we are without jurisdiction to consider his appeal from the district court's denial of his motion. *Richardson*, 468 U.S. at 322.

Our conclusion as to the colorability of Shelby's claims is bolstered by the fact that his invocation of *Yeager II* appears largely to be pretext for revisiting the reasoning and outcome of our prior panel decision.  Shelby's motion to dismiss the indictment argues at length that the prior panel made "factual errors in its analysis of Shelby's acquittals" and erred in its conclusion that "legally significant differing evidence" underlay the Early 2000 as opposed to the Summer 2000 trades.  Shelby does not contend that these conclusions are affected by *Yeager II*, but appears to assume that we could revisit these issues if *Yeager II* affected some other issue in his jeopardy claim.  This of course is false—absent any change in the intervening law on a particular issue, we have no power to revisit another panel's legal and factual conclusions.  *See Martinez–Rios*, 595 F.3d at 586 n.5.

### IV.  Conclusion

Shelby has failed to raise a colorable double jeopardy claim.  Accordingly, we DISMISS, for lack of subject-matter jurisdiction, his appeal from the district court's denial of his pretrial motion to dismiss and REMAND for trial.

DISMISSED and REMANDED.

12