File Name: 12a1308n.06

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 10-4060

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Dec 27, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| J.L. SPOONS, INC., dba Christie's Cabaret of Brunswick; ENTERTAINMENT U.S.A. OF CLEVELAND, INC., dba Christie's Cabaret of Cleveland; SSY, INC., dba Christie's Cabaret of Youngstown; BUCKEYE ASSOCIATION OF CLUB EXECUTIVES, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> OHIO DEPARTMENT OF PUBLIC SAFETY; ROCCO J. COLONNA, in his official capacity as a member of the Ohio Liquor Control Commission; KEITH MCNAMARA, in his official capacity as Chairman of the Ohio Liquor Control Commission; OHIO LIQUOR CONTROL COMMISSION; NANCY J. DRAGANI, Acting-Director of the Ohio Department of Public Safety; ROBERT A. GARDNER, Ohio Liquor Control Commission, <br><br> Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |

BEFORE:  CLAY and WHITE, Circuit Judges; HOOD, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.**  This First Amendment case is before us for a second

time.  Plaintiffs-Appellants, three Ohio strip clubs and a strip-club association (Plaintiffs), challenge

the district court's determination on remand that our prior decision in this case precludes Plaintiffs'

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

as-applied challenge to certain provisions of Ohio Liquor Control Commission Rule 52, Ohio Admin. Code 4301:1-1-52 §§ (A)(2), (B)(2), and (B)(3) (Rule 52 or the regulation), that proscribe nudity and sexual activity at liquor-licensed establishments. They also appeal the district court's denial of their renewed facial challenge to Rule 52 based on a recent Supreme Court decision. Because Plaintiffs' as-applied challenge has yet to be decided on the merits, we **REVERSE** the district court's dismissal of their as-applied claim and **REMAND** for further proceedings. We **AFFIRM** the district court's dismissal of Plaintiffs' renewed facial challenge to Rule 52.

## I.

From the start, Plaintiffs have asserted that in addition to being facially overbroad, Rule 52 is unconstitutional as applied to their establishments on the basis that the Ohio Liquor Control Commission (the Commission) adopted the regulation without sufficient evidence showing that Ohio strip clubs cause adverse secondary effects and, alternatively, that Plaintiffs' evidence successfully refuted the evidence on which the Commission relies for the regulation's secondary-effects rationale. In the first round of proceedings, the district court sustained Plaintiffs' facial challenge to Rule 52 and enjoined enforcement of the regulation. Having so ruled, the district court found it unnecessary to reach Plaintiffs' as-applied challenge. On appeal, this court held that Rule 52 is not facially overbroad and reversed. *See J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379 (6th Cir. 2008) (*J.L. Spoons I*). There was no need to address the as-applied challenge, the district court having decided the case on other grounds.

2

No. 10-4060
*J.L. Spoons, Inc., et al. v. Ohio Dep't of Pub. Safety, et al.*

On remand, Plaintiffs sought decision on their as-applied challenge and also renewed their

facial challenge, asserting that the Supreme Court's intervening decision in *United States v. Stevens*,

-- U.S. --, 130 S. Ct. 1577 (2010), changed the law and supported their facial challenge. The district

court[1] held that *Stevens* did not change the applicable law and was not inconsistent with our first

decision in this case, and further concluded that our first decision effectively decided Plaintiffs' as-

applied challenge and foreclosed further litigation of that claim on remand.

**II.**

The prior panel summarized the first round of this litigation, including the history of Rule

52:

> In July 2000, the district court permanently enjoined enforcement of several
> sections of old Rule 52[,[2]] finding them invalid under the First and Fourteenth
> Amendments. As a result, . . . the Commission . . . commenced proceedings for the
> enactment of a new version of Rule 52. In September 2003, the Commission
> received evidence and testimony regarding the validity of proposed new language for
> Rule 52. At this hearing, Mark Anderson, Executive Director of the Commission,
> testified that the earlier version of Rule 52 had been rescinded and that all of the
> filing requirements imposed by state law for the new version of Rule 52 had been
> met.
>
> The Commission heard extensive testimony from Bruce Taylor, an attorney
> from Fairfax, Virginia. Throughout his career he prosecuted vice crimes, including
> obscenity, prostitution, and liquor violations. He spoke at length about his
> understanding of precedent in this area and the constitutionality of liquor regulations.
> He testified that "nude dancing does contribute to its own types of secondary effects

---

[1]The judge who presided over the first round of district-court proceedings passed away after
our first decision, and another judge took over the proceedings on remand.

[2]"The primary difference between the old and the new Rule 52 is that the old Rule 52 covered
the showing of electronically reproduced images depicting actual or simulated sexual activities."
*J.L. Spoons I*, 538 F.3d at 381 n.1.

and to a greater degree than other liquor bars that don't have nude dancing." Specifically, prostitution, drug trafficking, and fights occur more frequently in and around bars that allow nude dancing than those that do not permit nude dancing. Taylor expressed his opinion that the language under consideration for the new Rule 52 would be held constitutional by the courts.

The new version of Rule 52 was finalized and filed on February 9, 2004. It was scheduled to take effect on February 20, 2004. On February 20, [Plaintiffs] filed [this] suit[, pursuant to 42 U.S.C. § 1983 and other laws, against the Commission, the Ohio Department of Public Safety, and several officials associated with these two agencies (collectively, Defendants),] after learning of plans for enforcement agents to investigate strip clubs to determine compliance with Rule 52. They claimed that the Rule 52 provisions concerning "nudity" and "sexual activity" were broadly restrictive of protected expression [and unconstitutional as applied to adult establishments]. They sought a declaratory judgment that these sections were unconstitutional and a permanent injunction barring their enforcement. The district court granted the request for a temporary restraining order and scheduled a preliminary injunction hearing.

At the preliminary injunction hearing, . . . [P]laintiffs called Dr. Judith Hanna, Ph.D., a cultural anthropologist and sociologist who researches and writes about arts, dance, and society. She stated that exotic and erotic dance has artistic value and conveys a range of potential messages. She also discussed a variety of "mainstream" ballet, modern dance, and theater performances that allegedly involve types of nudity and sexual contact that could be prohibited by Rule 52. [Plaintiffs] also presented testimony from Dr. Daniel Linz, Ph.D., a sociologist and psychologist, who stated that his research showed no positive correlation between the presence of liquor-serving establishments featuring nude or semi-nude dancing and the types of crimes cited by the Commission in support of its decision to adopt Rule 52. Dr. Linz stated that in some cases there was a negative correlation, meaning that nude dancing establishments actually decreased crime in the surrounding community.

The Commission then presented testimony from Scott Pohlman of the Ohio Department of Safety in support of Rule 52. He described numerous occasions where he personally observed illicit behavior in and around liquor-serving establishments that feature nude or semi-nude dancing. He stated that Rule 52 was needed to limit illicit behavior.

Following the hearing, the Commission agreed to refrain from enforcing Rule 52 until at least April 1, 2004, in order to grant the district court enough time to enter a ruling on [Plaintiffs]' motion for a preliminary injunction. On April 1, the district

> court granted [P]laintiffs' motion for a preliminary injunction against the Commission. It enjoined . . . [enforcement of Rule 52's challenged provisions] anywhere in Ohio. In January 2007, it granted . . . a permanent injunction and declared [the challenged provisions] unconstitutionally overbroad.

*J.L. Spoons I*, 538 F.3d at 381–82. The district court declined to resolve Plaintiffs' as-applied claim.[3]

In August 2008, a divided panel of this court reversed. Before addressing the facial challenge at issue, the majority observed that "Rule 52 is almost identical to the regulation upheld by the Supreme Court in *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000)," where the ordinance made it "a summary offense to knowingly or intentionally appear in public in a 'state of nudity.'" *Id.* at 382 (internal citation altered). After reviewing the Supreme Court cases analyzing laws targeting adverse secondary effects of nude dancing, the majority stated that "*Pap's A.M.* would be directly on-point and would decide [this case] were it not for the fact that the district court struck down Rule 52 on the grounds that it was overbroad," while *Pap's A.M.* was decided on First Amendment grounds under the intermediate scrutiny standard set forth in *United States v. O'Brien*, 391 U.S. 367 (1968). *Id.* at 382–83.

---

[3]In issuing a permanent injunction, the district court adopted, from its April 2004 preliminary injunction order, its analysis with respect to the merits of Plaintiffs' facial challenge. *See J.L. Spoons, Inc. v. Morckel*, Nos. 98-cv-2857, 04-cv-314, 2007 WL 14581, at *2 (N.D. Ohio Jan 3, 2007), *reversed by J.L. Spoons I*, 538 F.3d 379. In that order, the district court did not resolve Plaintiffs' as-applied claim, stating that it was "uncertain to what extent the Supreme Court would advocate that [it] simply approve [Ohio]'s reliance on 'propositions . . . well established in common experience and . . . zoning policies that [the Supreme Court] ha[s] already examined,' and ignore the implications of more persuasive, if counterintuitive, evidence like Dr. Linz's study." *J.L. Spoons, Inc. v. Morckel*, 314 F. Supp. 2d 746, 756 (N.D. Ohio 2004) (internal citation omitted).

Turning to the facial challenge, the majority found "that Rule 52 is a constitutional, content-neutral regulation of the undesirable secondary effects, including prostitution, drug trafficking, and assault, associated with nude dancing in an environment serving alcohol. It is not overbroad." *Id.* at 382. Specifically, the majority concluded that Plaintiffs had failed to show that Rule 52 involved a substantial amount of "impermissible applications" relative to its "plainly legitimate sweep." *Id.* at 383–86. The regulation's arguably impermissible applications to artistic expression did not render it substantially overbroad, since such applications amounted to only a fraction of Rule 52's reach. *Id.* at 384–86. The dissenting panel member—while opining "that Rule 52 *as applied* to nude-dancing establishments would be constitutional"—disagreed with the majority's analysis primarily on the basis that the regulation applied to all Ohio liquor permit holders, half of which could potentially present live entertainment, and did not exempt persons engaging in performances with literary, artistic, or political value. *Id.* at 386–93 (Cole, J., dissenting).

We denied en banc rehearing, and the Supreme Court denied certiorari. *See J.L. Spoons, Inc. v. Guzman*, 130 S. Ct. 53 (2009) (mem.). The same day certiorari was denied, Plaintiffs returned to the district court seeking to enjoin enforcement of Rule 52 on the basis of their yet-to-be-decided as-applied claim. At a subsequent hearing, Plaintiffs argued that the intervening decision in *United States v. Stevens*, -- U.S. --, 130 S. Ct. 1577 (2010)—in which the Supreme Court held that a federal statute criminalizing certain depictions of animal cruelty was facially overbroad in violation of the First Amendment—warranted renewal and reconsideration of their facial challenge to Rule 52.

No. 10-4060
*J.L. Spoons, Inc., et al. v. Ohio Dep't of Pub. Safety, et al.*

After additional briefing, the district court denied Plaintiffs' motion for injunctive relief and dismissed the action, concluding that: (1) *Stevens* did not set forth a contrary view of First Amendment law or materially change the law to support reconsideration of Plaintiffs' facial challenge under law-of-the-case principles; and (2) the *J.L. Spoons I* decision had resolved Plaintiffs' facial challenge in a way that foreclosed further consideration of their as-applied claim. *See J.L. Spoons, Inc. v. Collins-Taylor*, No. 04-cv-314, 2010 WL 3370184 (N.D. Ohio Aug. 26, 2010). This timely appeal followed.

## III.

## A.

Although "[w]e use an abuse of discretion standard when reviewing a lower court's application of the law-of-the-case doctrine," *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002), we review de novo purely legal questions such as those involving First Amendment law. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007); *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002). The law-of-the-case doctrine precludes reconsideration of a previously-decided issue at a subsequent stage in the litigation "unless one of three 'exceptional circumstances' exists: [1] the evidence in a subsequent trial was substantially different; [2] controlling authority has since made a contrary decision of law applicable to such issues; or [3] the decision was clearly erroneous, and would work a substantial injustice." *Poundstone v. Patriot Coal Co.*, 485 F.3d 891, 895 (6th Cir. 2007) (quoting *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 767 (6th Cir. 1989)) (alterations in original); *see United States v.*

7

*Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (explaining that these principles also apply in determining whether a district court is authorized to reconsider an issue decided by the appellate court).

Thus, Plaintiffs may renew their facial challenge only if *Stevens*, 130 S. Ct. 1577, modified First Amendment overbreadth doctrine in a way that is contrary to the prior panel's approach in *J.L. Spoons I*. *Stevens*, however, did not announce a material change to that doctrine. In *Stevens*, the Supreme Court addressed a facial challenge to 18 U.S.C. § 48 (2009) (Section 48), a federal statute that, at the time, criminalized the commercial creation, sale, or possession of certain depictions of animal cruelty. *See* 130 S. Ct. at 1582. Congress enacted Section 48 to target "crush videos," i.e., videos that depict women slowly crushing helpless animals to death "with their bare feet or while wearing high heeled shoes," which apparently "appeal to persons with a very specific sexual fetish[.]" *Id.* at 1583 (quoting H.R. Rep. No. 106-397, at 2–3 (1999)). The Court, in declining the government's request to carve out a new category of unprotected speech based on depictions of animal cruelty, stated that it would review the challenge to Section 48 under its "existing doctrine." *Id.* at 1586. The Court then applied the same overbreadth principles the majority applied in *J.L. Spoons I*. *Compare Stevens*, 130 S. Ct. at 1587 *and* 1591–92 *with J.L. Spoons I*, 538 F.3d at 383–84.

After determining that Section 48 "create[d] a criminal prohibition of alarming breadth," given that (among other reasons) it applied well beyond crush videos to depictions where an animal was "wounded" or "killed," *id.* at 1588, the Court rejected the government's arguments aimed at saving the statute. First, the Court stated that "[t]he only thing standing between defendants who sell

such depictions and five years in federal prison—other than the mercy of a prosecutor—is the statute's exceptions clause," which "exempt[ed] from prohibition 'any depiction that has serious religious, political, scientific, educational, journalistic, historical, or artistic value'" (serious-values exception). *Id.* at 1590 (citation omitted). But, the Court reasoned, this serious-values exception did not substantially narrow the statute's reach, as the First Amendment protects many forms of speech that are not inherently valuable enough to fall within the exception but, nonetheless, would be prohibited by Section 48. *Id.* at 1590–91. Second, the Court responded to the government's assurance, as a basis to uphold the statute, that it would use prosecutorial discretion to target depictions of only "extreme" cruelty, by observing that the First Amendment "does not leave us at the mercy of *noblesse oblige*" and that the Court "would not uphold an unconstitutional statute merely because the [g]overnment promised to use it responsibly." *Id.* at 1591. The Court concluded that Section 48 was unconstitutionally overbroad because "the presumptively impermissible applications" of the statute, such as to hunting magazines and videos, "far outnumber[ed] any [arguably] permissible ones" aimed at crush videos or other depictions of extreme animal cruelty—the legislative targets of Section 48.[4] *Id.* at 1592.

Contrary to Plaintiffs' suggestion, *Stevens* did not hold that a law is facially overbroad merely because it lacks a serious-values exception and there is no assurance of prosecutorial discretion. This interpretation of *Stevens* would render a host of otherwise facially valid laws unconstitutional.

---

[4]Following *Stevens*, Congress amended Section 48 to limit its prohibition to "crush videos," i.e., obscene depictions of animals being "intentionally crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury." Animal Crush Video Prohibition Act of 2010, Pub. L. 111-294, § 3(a), 124 Stat. 3178 (2010) (codified at 18 U.S.C. § 48 (2010)).

In *Stevens*, the Court found that Section 48's breadth was "alarming," 130 S. Ct. at 1588, and then rejected the government's arguments for saving the statute *despite* its substantial overbreadth. Here, by contrast, the majority in *J.L. Spoons I* found that Rule 52 is not overbroad; thus no limiting construction is necessary. Moreover, although Plaintiffs disagree with the majority's application of First Amendment law to the facts of their case and advance that the dissent's analysis is correct, "absent any change in the intervening law on a particular issue, we have no power to revisit another panel's legal and factual conclusions." *United States v. Shelby*, 604 F.3d 881, 888 (5th Cir. 2010) (per curiam); *see Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010). Accordingly, we affirm the district court's dismissal of Plaintiffs' renewed facial challenge to Rule 52.

## B.

The district court concluded that the *J.L. Spoons I* decision foreclosed further consideration of Plaintiffs' as-applied challenge to Rule 52. We disagree because the prior panel did not decide this claim. We review de novo a district court's interpretation of an appellate mandate, with the view that "[t]he district court must 'implement both the letter and the spirit of the mandate' and take into account 'the circumstances it embraces.'" *United States v. Haynes*, 468 F.3d 422, 425 (6th Cir. 2006) (quoting *United States v. Moore*, 131 F.3d 595, 599 (6th Cir. 1997)). The mandate rule, which is a "specific application" of the law-of-the-case doctrine, *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992), "generally preclude[s] a lower court from reconsidering an issue expressly or impliedly decided by a superior court," *United States v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007) (per curiam) (quoting *Moored*, 38 F.3d at 1421). "In determining the scope of an appellate mandate, the majority, concurring, and dissenting opinions may be consulted." *Jones*, 957 F.2d at 262 (citations

omitted); *see* Fed. R. App. P. 41(a) (an appellate court's mandate includes both the judgment and the court's opinion).

The parties agree that neither the district court nor this court ruled on Plaintiffs' as-applied challenge in the first round of litigation. The district court acknowledged that the prior panel "only dealt expressly with the facial constitutional challenge," but reasoned that the panel "did so in a way that foreclosed an *as applied* challenge by strip club owners such as [P]laintiffs." *J.L. Spoons*, 2010 WL 3370184, at *2. The district court's reasoning was understandable, given language in the majority and dissenting opinions stating that the prior panel accepted for purposes of its decision that Rule 52 was a constitutional regulation of the undesirable secondary effects associated with strip clubs. *See, e.g.*, *J.L. Spoons I*, 538 F.3d at 382–83; *id.* at 387 (Cole, J., dissenting).

However, a finding that a law is facially constitutional under the First Amendment generally does not foreclose subsequent as-applied challenges. *See, e.g.*, *Wisconsin Right to Life, Inc. v. FEC*, 546 U.S. 410 (2006) (per curiam). And here, the prior panel did not decide Plaintiffs' as-applied claim. In originally granting injunctive relief, the district court declined to reach Plaintiffs' as-applied claim, and, in reversing the district court's injunction, the majority acknowledged that the district court had struck down Rule 52 only on overbreadth grounds. *See J.L. Spoons I*, 538 F.3d at 383. Citing *Paps' A.M.*, the majority observed that it is constitutional to enact regulations targeted against the secondary effects associated with strip clubs and recognized that a state or municipality need not conduct studies documenting these effects or develop a specific evidentiary record to support a regulation targeted against such effects. *Id.* Then, relying on general overbreadth principles, the majority explained that a regulation's facial validity depends on whether it goes

11

beyond this legitimate purpose and prohibits or chills a substantial amount of protected speech. *Id.* at 383–86. The majority did not express any further view that foreclosed Plaintiffs' as-applied claim.

Although laws targeted against secondary effects are presumed constitutional, it is a separate question whether, in a specific situation, there are secondary effects that need to be addressed. In *City of Renton v. Playtime Theatres, Inc.*, the Supreme Court recognized that the adverse secondary effects associated with adult establishments can be "caused by the presence of even one such" establishment. 475 U.S. 41, 50 (1986). In upholding a municipal zoning ordinance prohibiting adult theaters from being located within 1,000 feet of any residential zone, family dwelling, church, park, or school, the *Renton* Court held that a government may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial interest aimed at curtailing adverse secondary effects associated with adult establishments; such evidence includes the experiences of "other cities" and the detailed findings made by courts with respect to other zoning ordinances. *Id.* at 51–52. Following *Renton*, the Court's plurality opinion in *Paps' A.M.* reiterated that a government may reasonably rely on the experience of other jurisdictions relevant to the secondary-effects problem it is addressing. 529 U.S. at 297 (O'Connor, J., plurality op.). These cases establish that there is a general presumption that a government may regulate secondary effects associated with strip clubs by relying on a body of prior experience. The Supreme Court, however, has also laid out a procedure for plaintiffs who seek to disprove a government's reliance on such "propositions . . . well established in common experience and in zoning policies that [the Supreme Court] ha[s] already examined." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S.

425, 453 (2002) (Kennedy, J., concurring) (stating that, "[i]f these assumptions can be proved

unsound . . . then [an] ordinance might not withstand intermediate scrutiny").

In *Alameda Books*, the case underlying Plaintiffs' as-applied claim, the plurality opinion set

forth a three-step burden-shifting test for determining whether a government has a substantial interest

in enacting a regulation targeted against secondary effects:

> [First,] a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest. This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its [regulation]. [Second, i]f [P]laintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*. [Third, i]f [P]laintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Id.* at 438–39 (O'Connor, J., plurality op.) (internal citations omitted). We apply the plurality's

"burden-shifting framework governing the evidentiary standard in secondary-effects cases.'"[5]

*Richland Bookmart, Inc. v. Knox Cnty., Tenn.*, 555 F.3d 512, 525 (6th Cir. 2009) (quoting

*Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 297 n.5 (6th Cir. 2008)); *see 84*

*Video/Newsstand, Inc. v. Sartini*, 455 F. App'x 541, 548 (6th Cir. 2011) (unpublished).

In *J.L. Spoons I*, the court did not evaluate the secondary-effects evidence under the *Alameda*

*Books* standard. It simply accepted the established proposition that regulations targeting the

---

[5]We have noted that Justice Kennedy's concurrence in *Alameda Books*, while representing the narrowest grounds concurring in the Court's judgment, "seems to endorse the evidentiary standard set forth by the plurality, and departs from the plurality on a different point." *Richland Bookmart*, 555 F.3d at 525 n.5 (citation omitted).

secondary effects of strip clubs are presumed constitutional. Plaintiffs' evidentiary challenge to that general presumption, which is permitted under *Alameda Books* and our precedents, has never been resolved. We therefore reverse the district court's decision that Plaintiffs' as-applied claim was foreclosed by *J.L. Spoons I* and remand for the district court to rule on that claim. We leave the question whether Plaintiffs should be permitted to introduce new evidence in support of their as-applied claim to the district court's discretion.

## IV.

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings.